### AUGUST ECKHARDT v. FRITZ SCHLECHT.

The fraudulent declarations or acts of the husband, to which the wife is in nowise privy, cannot involve the homestead in any way in which the hus-band could not involve it by deed.

Where a party relied upon a letter as evidence of the wife's assent to sell a part of the homestead, he must prove that he accepted the terms within a reasonable time.

And since, as has been repeatedly decided by this court, (Berry v. Donley, 26 Tex., 737, and cases there cited,) her free and voluntary deed, unless ac-knowledged as prescribed by law, will not pass the title to her separate property, it is absurd to suppose that her mere tacit knowledge of the wrongful occupation and improvement of a portion of the homestead could have this effect.  (Paschal's Dig., Art. 1003, Note 427.)

APPEAL from Austin.  The case was tried before Hon. GEORGE W. SMITH, one of the district judges.

Eckhardt sued Schlecht in an action of trespass to try title.  The defendant plead a contract for the sale of the premises, which were a part of the homestead of the plain-

XXIX—9.

tiff, and as there never will be just such another document set up as the foundation of a claim to specific performance, the letter written by the plaintiff's wife is here given:

. "BELLVILLE, *April* 7, 1856.

"DEAR MR. SCHLECHT: I have received your esteemed letter one day after the presence of E. K. on my premises, and when he had already asked me about land, though he mentioned nothing about there being a letter for me; in consequence I was very much astonished. I told him, upon his question, that I would ask for the acre $7; whereupon he replied that he could not allow me more than $5 for the acre. During the conversation he was in such a hurry that I could gain no time to consider, and as it was my intention to write to you an exact account, I let him go for this time, and also have I found out that it is better not to be too much controlled by such people.

"By noticing in your letter an exact account of your opinion, I will give to you in return an exact account of my opinion.

"1. I am willing to sell unto you six acres.

"2. I do ask for the acre $5, under the following condition: That if you should shift your lodging, and being disposed to sell the land, I may have the privilege of buying back that land for the same price you paid for it, and indemnify you for your improvements.

"3. Should it not be your intention to buy, I do give to you, with pleasure, the permission to build a house upon the land, of the size proposed, and to take the necessary timber from my land.

"4. I do make the proposition to you that it will not be necessary for you to buy the land till your wife had been arrived, and you both unanimously do like this settlement and are pleased with the country. Besides, you may live here as long as you please, as I shall not ask for any payment during the first two years, during which time you will get more acquainted with the surrounding country, and then

you may still do what you please.   I shall assist you as much as is in .my power in building up your little house.   If you are satisfied with my proposition, I shall very soon expect you, and salute you as a good neighbor.   Sending my best respects, remain your friend,      AUGUST ECKHARDT."

The defendant went into possession about June, 1858, under the contract, and made improvements worth from $50 to $300 before the suit was commenced, and dug a well worth from $100 to $120 afterwards.   The property was a part of the homestead of the plaintiff.   The case was submitted to the court, who gave the land sued for to the plaintiff, and, on the plea of reconvention for improvements, found $350 for defendant, to be paid before writ of possession should issue.

The plaintiff prosecuted error.

*A. P. Thompson,* for appellant.—Mr. Thompson argued the facts of the case at great length and with clearness.

*Ben. T. Harris,* for appellee.—The written agreement, in the shape of a letter, and its translation, made part of defendant's answer, shows conclusively that both plaintiffs had conspired to defraud defendant.   Statement of facts shows that they (plaintiffs) used all sorts of deceitful duplicity, and in every way imposed upon the confiding credulity of defendant, for the purpose of carrying out and accomplishing said fraud, and reaping its benefits, by having their land improved.   Even coverture and minority cannot sanctify fraud.   Fraud vitiates every thing it touches.   No persons capable of contracting will be allowed to avail themselves of the benefit of their own fraud.   (O'Brien v. Hilburn, 9 Tex., 297; Crayton v. Munger, 9 Tex., 285; 2 Story's Eq., § 695; 1 Story's Eq., § 285; 1 Greenl. on Ev., § 207; Cravens v. Booth, 8 Tex., 243; 4 Bouv. Inst., 218, No. 3921.)

The written agreement, made part of defendant's answer,

when not contradicted by plaintiff, must be taken as true. (O. & W. Dig., Art. 429.)

Having induced defendant, by deceitful and friendly pretensions, to go upon and improve the land in controversy, plaintiffs cannot afterwards prostitute the courts of justice to aid them in the furtherance of their (plaintiffs') fraudulent and nefarious designs. The court cannot compel plaintiffs to make a conveyance of the land to defendant, it appearing to be a part of the homestead, but can continue defendant in the equitable possession of that portion into the improvement of which he has been fraudulently deluded by irresponsible persons, until his damages shall have been satisfied. The court can equitably do this, by withholding the writ of possession until plaintiffs repair the injuries resulting from their own fraud, by paying the damages. (4 Bouv. Inst., p. 135, No. 3791, ¶ 3; and p. 218, No. 3921.) The judgment is just and equitable, and only works a hardship upon plaintiffs, by defeating their fraud and conspiracy against defendant.

MOORE, C. J.—It cannot of course be supposed that the fraudulent declarations or conduct of the husband, to which the wife is not privy, will be held in equity to pass the title to the homestead, or create any charge upon it which the husband could not make by deed. Nor could any one be found who would insist that the fraud of the husband will bar its recovery for the use of the family. To do this, if it can be error, then there must be fraud both on the part of the husband and wife, for which no other adequate redress can be afforded. It is, however, much too clear for argument, that there is not in this case the slightest evidence of any fraud by Mrs. Eckhardt, inducing appellee to purchase, as he claims to have done, the land for which this suit was brought. Eckhardt's proposition was made on the 7th of April, 1856; yet appellee neither avers nor proves that he accepted or acted

upon this proposition until the 8th of June, 1858, at which time he claims to have "fully and fairly performed his part of the contract, by improving said land, and moving on the same with his family," and by his payment of the purchase money into court with his answer. And if it can be inferred that Mrs. Eckhardt, when she wrote the letter which is relied upon as evidence of her assent to the sale of the land, knew of the terms upon which it was offered by her husband, and intended to manifest her willingness to concur in them, is there the slightest ground to say that she intimated or supposed the purchase, if made by appellee, would not be consummated in the manner directed by the statute? or that she knew, or had any just reason to suppose, that, after his long delay, appellee had taken possession of the land, in the belief that he was authorized to do so by her letter? Appellee, therefore, had no right to believe from this letter alone, either that she encouraged or would acquiesce in his occupation of the land. And since, as has been repeatedly decided by this court, (see Berry v. Donley, 26 Tex., 737, and cases there cited,) her free and voluntary deed, unless acknowledged as prescribed by law, will not pass the title to her separate property, it is absurd to suppose that her mere tacit knowledge of the wrongful occupation and improvement of a portion of the homestead could have this effect.

The decision of the district court was made, however, upon the ground, that while the permission given appellee to enter upon the land, and appellant's knowledge that he was making the improvements, did not divest them of the title, equity forbids appellee being dispossessed, except upon compensation for such improvements. But it must be observed, that the question presented is not whether a party who has acted under a license not sufficient absolutely and conclusively to bind the parties, because not in the form required by law, may not protect himself against

liability for acts done under its sanction, nor as to the right in such case to claim a corporeal hereditament, which, if it could be the case, would not interfere with or impair the use and enjoyment of the homestead, nor as to the power of a court of equity to permit the occupant taking from the premises the materials furnished by him which are susceptible of removal.

The record presents the bald question, whether the family may be deprived of the use of a considerable part of the homestead until compensation is rendered for improvements which, without interfering to stop them, the wife knew were being made. If such is the case, the protection given by the constitution and law to the homestead would be idle and nugatory. Improvements, worthless to the family, might become an assurance of title as effectual as a deed properly executed and acknowledged; or their very poverty, the strongest reason why the family should be secured the small pittance allowed them by law, might occasion its loss; or the husband, by whose wrongful connivance the occupant had entered, might withhold the means of compensating for them, and thus give effect to his original wrong. But the law does not permit thus circuitously to be accomplished that which cannot be done directly. Homesteads are, fortunately, secured to families with us by no such uncertain tenure. They are, neither in respect to their title nor use, the subject of direct or indirect forced sale. The decree of the court, in our opinion, violates this fundamental principle, and it must therefore be reversed.

If the facts in respect to the value of the improvements, and all the circumstances in connection with appellee's entry and occupation of the land, were before us, we would proceed to render such judgment as should be given in the case. But we are led to the conclusion, from an inspection of the record, that (if, indeed, all the facts are stated in the

transcript, which were before the court below) they may be presented in a much more full and satisfactory manner on another trial.

It is therefore ordered that the judgment be reversed, and the cause

REMANDED.