[Opinion delivered June 27, 1884.]

Associate Justice WEST did not sit in this case.

M. S. COLE v. WM. BAMMEL.

(Case No. 1791.)

1. DEED BY MARRIED WOMAN.— In order that a deed from a married woman may divest her interest in her separate property, she must be first examined by an officer duly authorized, privily and apart from her husband, who, after explaining the contents of the deed to her, must certify to those facts, and also to the effect that she had fully and voluntarily executed the deed, and wished not to retract it. But if the husband who joins her in the deed shall fraudulently receive from the purchaser a less amount of money than that specified therein, which the wife had agreed to take at the time of acknowledging the instrument, no title will pass by the delivery of the deed.

2. PURCHASER IN GOOD FAITH.— The principle above announced is not varied by the fact that the married woman acknowledges the deed with the name of the grantee in blank, the consideration, however, being plainly specified. If the husband or another agent of the wife, having possession of such a deed, negotiates and delivers it to a purchaser for a less sum than that specified, the purchaser buys at his peril, and will be charged with notice of the wife's

unwillingness to sell for a less sum than that mentioned in the deed. If the sale, after the acknowledgment of the deed by the wife, was effected by the husband or by another, the receipt of the money by such agents would not estop the wife.

3. CASE FOLLOWED. — Edwards v. Dismukes, 53 Tex., 605, referred to and followed.

4. PURCHASER IN GOOD FAITH. — One who purchases land under the circumstances above referred to, and who, without the wife's knowledge, receives her deed, paying a less sum than that stipulated in the deed, cannot ordinarily be a purchaser in good faith.

### ON MOTION FOR REHEARING.

5. POSSESSOR IN GOOD FAITH. — It would seem that when the defect in a title exists in the power under which it is executed, and is such as the true owner could waive by parol or acts done *in pais,* any act or conduct of his which would lead the purchaser to believe that the defect was waived, or that the true owner had acquiesced in his possession and improvement of the property, would constitute the purchaser a possessor in good faith.

6. PAY FOR IMPROVEMENTS. — A married woman whose separate property was claimed and occupied, under a deed made by her in blank, for a larger sum of money specified therein than her agent afterwards undertook to sell for when the deed was delivered, remained silent for seven years while the purchaser was improving the property. *Held,* that under such circumstances the purchaser was entitled to pay for the value of his improvements before eviction.

ERROR from Harris. Tried below before the Hon. James Masterson.

Plaintiff in error, M. S. Cole, a married woman, sued in *trespass to try title* for a three-acre tract of land, and a fractional part of an acre adjoining, situated in the city of Houston. Her husband refused to join her in the suit, and leave was granted her by the court to prosecute it alone. The plaintiff was the owner of the property sued for. After marriage with her husband, she, with him, acknowledged an instrument of writing, which purported to convey the land described in the petition. It recited a consideration of $1,500, for which the plaintiff had expressed her willingness to convey the property. This instrument was never delivered by her to any one. There was no grantee. Where the grantee's name should have appeared was a blank. This instrument was handed to her husband, who left it with one E. C. Stockton, a real estate agent, to be delivered to any purchaser who would pay for the property described the sum of money recited as the consideration. Stockton bargained with the defendant for the property, and it was made to appear that the defendant agreed with Stockton to pay him the amount expressed in the deed. Before the payment of the money, the defendant had the title to the premises examined by attorneys. Upon

examination a real or supposed defect of title was discovered and reported to the defendant, who declined to complete the trade. Thereupon Stockton, without the knowledge or consent of the plaintiff, or being thereunto authorized by her, entered into his own negotiations with the defendant, which resulted in Stockton's taking $1,000 for the property. This was done notwithstanding the supposed defect of title was remedied by a proper° deed executed *ad interim* and before the payment of the $1,000. The plaintiff's husband received the $1,000 from Stockton, and on his return home tendered his wife, the plaintiff, $600, stating that he had spent the rest. She refused to accept it. Her husband refused to join her in bringing a suit to recover the property, and she sued alone to recover it, seven years after the transaction above detailed.

Plaintiff prayed for cancellation of the defendant's pretended deed, for title and possession of the property in controversy, etc., and for general relief. The defendant answered by general and special demurrers, which were overruled, by plea of not guilty and special denials, by plea and prayer for specific performance, by plea of equitable estoppel, by plea and prayer for equitable relief in the return of the $1,000 paid by him to Stockton, and by plea for the value of permanent improvements, etc. The defendant deraigned title on the trial from and under plaintiff by virtue of the instrument above referred to. Tried before the court without the intervention of a jury, and judgment for the defendant.

*Presley K. Ewing*, for plaintiff in error, cited: R. S., arts. 559, 4310; Drury *v.* Foster, 2 Wall., 24; McCown *v.* Wheeler, 20 Tex., 372; Viser *v.* Rice, 33 Tex., 139; Bishop on Contracts, secs. 176–184; B. & M. R. R. *v.* Bartlett, 3 Cush., 224; Berry *v.* Donley, 26 Tex., 737; Fitzgerald *v.* Turner, 43 Tex., 79; Ruleman *v.* Pritchett, 56 Tex., 485; Cannon *v.* Boutwell, 53 Tex., 626; Edwards *v.* Dismukes, 53 Tex., 605; Wade, Law of Notice, sec. 17; Story, Agency, sec. 133, p. 160 (8th ed.); Cravens *v.* Booth, 8 Tex., 243; O'Brien *v.* Hilburn, 9 Tex., 297; Sexton *v.* Wheaton, 8 Wheat., 238–9; Bishop, Married Women, sec. 489; Bigelow on Estop., 486, 489, 490; Stephenson *v.* Osborne, 41 Miss., 119, 125; 22 Ala., 86; 51 Maine, 367; Clark *v.* Gifford, 10 Wall., 311; 23 Wend., 43; Robson *v.* Osborn, 13 Tex., 308; Eckhardt *v.* Schlecht, 29 Tex., 134; Kerr on Fraud & Mistake, p. 2.

*Crank & Taliaferro*, for defendant in error, cited: Hilliard on Vend., pp. 65, 112; Williams *v.* Chandler, 25 Tex., 11; Dunham *v.*

Chatham, 21 Tex., 248; Love v. Barber, 17 Tex., 318; Ragsdale v. Robinson, 48 Tex., 379; Womack v. Womack, 8 Tex., 413; Dalton v. Rust, 22 Tex., 154; Fitzgerald v. Turner, 43 Tex., 83; Cravens v. Booth, 8 Tex., 249; White v. Denman, 16 Ohio, 59; McCown v. Wheeler, 20 Tex., 373; Miller v. Alexander, 8 id., 44; Pasch. Dig., art. 1003, p. 261; 9 Serg. & R., p. 268; Callahan v. Patterson, 4 Tex., 68; Hartley v. Frosh, 6 id., 216; Shelby v. Burtis, 18 id., 651.

C. L. Cleveland, also, for plaintiff in error on motion for rehearing.

WILLIE, CHIEF JUSTICE.— It clearly appears from the evidence in this cause that the appellant, a married woman, executed and acknowledged in the form prescribed by law, a deed to the property in controversy, which recited a consideration of $1,500; the name of the grantee being left blank in the conveyance. Also that this was the amount of money she was willing to take for the land, and that she never consented to take less, or authorized any one to deliver the deed upon payment of any other sum. It further appears that the deed was placed by her husband in the hands of Stockton to enable him to effect a sale of the property, and that the appellee at one time intended to purchase it for $1,500, and understood that to be the price asked for the property, and would have purchased at that price but for a supposed defect in the title, and that he afterwards declined to do so, but was willing to give $1,000 for it. That subsequently he and Stockton agreed upon that price, and Bammel received the deed with the consideration of $1,500 expressed in it and his own name inserted as grantee, but paid only $1,000 for the land. All this was done without the knowledge or consent of the wife, and she refused to receive any part of the purchase money which had been paid by Bammel.

Can Mrs. Cole recover from Bammel the property claimed by him under this state of title?

Our statutes, in their watchful care over the rights of married women, have prescribed the only manner in which their separate property may be conveyed by deed, and any conveyance not executed in strict conformity with the statute is an absolute nullity. Berry v. Donley, 26 Tex., 737; Fitzgerald v. Turner, 43 Tex., 79; Eckhardt v. Schlecht, 29 Tex., 129.

Reposing confidence in certain officers named for that purpose, it requires that one of them shall examine the wife privily and apart from her husband, explain the contents of the deed to her, and take her acknowledgment to the effect that she freely and voluntarily executed the deed and wished not to retract it.

This done, and properly certified to, and the deed delivered to the grantee, the title of the wife passes to the purchaser as completely as it would by the conveyance of a single person.

A married woman's deed, however, may have the proper certificate attached, and yet be avoided by her if the certificate does not speak the truth, or the deed or acknowledgment were obtained by fraud or force, provided the purchaser is chargeable with notice of either of these facts before the purchase money is paid. Davis *v.* Kennedy, 58 Tex., 516; Wiley *v.* Prince, 21 Tex., 637.

A full knowledge on the part of the wife of the contents of the deed is one of the principal objects to be attained by the private examination. If she is misinformed as to what it contains, or a deed differing materially from the one explained to her is substituted in its place, and this fact is known to the grantee, the conveyance is of no avail as against the wife. It is needless to add that if the deed be changed in an important particular after her acknowledgment has been taken, she cannot be compelled to abide by the altered instrument.

For instance, it would be a fraud upon her, if, by means of a conspiracy between the husband, the purchaser and the officer, a false statement of the contents of the deed should be made to her, and she should thereupon execute and deliver a deed for a different amount of purchase money from what she had agreed and was willing to receive. After the execution and delivery of a deed under such circumstances, it is clear that she could refuse to take the consideration and could recover the property thus obtained by fraud.

The acceptance by her husband of a different sum, under such a state of facts and without her special authority, would not be binding upon her, nor amount to a ratification of the fraud in which he participated.

The purchaser need not be an active participant in such a transaction in order to vitiate it, but it is sufficient if he had notice of its character before he parted with the purchase money.

In principle, the false reading of a wife's deed, so that it shall appear to be upon a different consideration from what it actually recites, or the changing of the deed in this respect, does not differ from the fraudulent act of receiving from the purchaser a less amount of money than the wife had agreed to take for the land when examined by the officer.

Such a proceeding imposes upon the wife a different contract from that which she had explained to her, and, in effect, forces upon her a conveyance she may have been unwilling to execute.

A wife unwilling to sell her separate estate for the price offered her might be induced to part with it for a much larger sum. The larger sum is inserted in the deed, and she executes it willingly, and so acknowledges to the notary. This deed is placed in the hands of her husband to deliver to the purchaser on receipt of the consideration. Contrary to her wishes, it is delivered upon payment of the very price she had refused for the land; she is, in effect, defrauded into the execution of an instrument she was unwilling to sign, and the beneficial design of the statute is frustrated.

Such is the case now before us. Leaving out of question the fact that the deed was executed in blank, and supposing that Bammel's name was in it as grantee on the day it was signed, and admitting that Stockton was made her agent by having the deed placed in his hands, we think the wife's title did not pass to the appellee.

She never agreed to sell for less than $1,500. She had no deed explained to her, nor did she willingly sign one, that conveyed her land for less than that sum. She at no time authorized her husband or Stockton to deliver the deed to any one upon receiving from the purchaser $1,000. She did not hold either of them out to the world as having authority to reduce the price named in the deed to a less sum under any circumstances. By placing in Stockton's hands a deed with an expressed consideration of $1,500, she notified all persons proposing to purchase that this was the price she was willing to take for the property. The instrument itself was the only evidence of the agency of the party having it in possession. It was the charter of his authority, and gave him no greater rights than would a power of attorney restricting the agent's power of sale to the event of his being able to do so for a specified sum. No one, upon reading it, had a right to conclude that the agent had a right to make any other terms than were made by the deed itself. It was a case of special agency to do a particular thing in a particular way. Persons dealing with such an agent must know that if a different act is done, or the one authorized is done otherwise than the power prescribes, he, and not the principal, must suffer if damage ensues to the latter in consequence of disobedience to his directions. Story on Agency, §§ 126, 224.

Bammel had, therefore, full notice that Mrs. Cole had empowered Stockton to sell her land for $1,500, and no other price. He had at one time, and whilst Stockton was offering to sell the land at that price, intended to give $1,500 for it, and fully understood that he must pay that amount of money for the land. The statement of the consideration in the deed put him upon inquiry as to the power

of Stockton to take a different sum. Had he pursued such inquiry to the proper source of information, he would have learned that Mrs. Cole had given Stockton no such authority, but was unwilling to take $1,000 for the land,—and he must be held to have had full knowledge of that fact before he bought. Wade on Notice, sec. 17. No declaration of the agent could bind the principal; for this would be to allow an agent to extend his authority beyond the powers granted him by his own act and not by the act of his constituent.

It is unnecessary for us to decide whether or not, if Mrs. Cole had ratified the unauthorized act by receiving the money paid to the agent, with full knowledge of all facts in reference to the sale, it would have estopped her from setting up a claim to the land. She refused to receive the money or to recognize the validity of the sale, and has not, therefore, ratified the act of her agent in the premises.

The receipt of the money by Stockton or by her husband could not estop her or work such ratification. The agent cannot ratify his own unauthorized act so as to bind his principal. And to permit a wife to be estopped from setting up a claim to her separate property of which she has been deprived by the unauthorized conduct of her husband or an agent, by reason of the receipt of the purchase money by the very parties who have contributed to defraud her, would, in effect, abolish the provisions of the statute as to conveyances of the separate property of married women.

Nor is any other principle of estoppel applicable to this case. Neither Mrs. Cole's conduct nor her silence has misled the appellee into a purchase of the land. She was ignorant of all attempts that were made to sell her land for less than $1,500. She never knew that it was on the market for a less sum till the $600 was offered to her by her husband. There was no time between the date of the deed and the consummation of the trade at which she could have spoken and forbidden the bargain. There was nothing that she said or did that could have led any one to believe that she would take $1,000 for the land; but the very contrary conclusion was to be drawn from all her conduct in the premises. Bigelow on Estoppel, 484.

Nor does the case present any equities in favor of the purchaser which entitle the latter to hold the land against her, or even to demand a return of the purchase money. As we have seen, no part of the purchase money was received by her. It was not shown that her separate property derived any benefit from it. No willingness on the part of the wife to sell the land upon the terms accepted by Bammel was proved, even if that would be of assistance to the appellee's case. The defect in the conveyance was not a mere formal

one. The proof is that there was neither a formal nor a substantial compliance with the terms of the statute; neither an acknowledgment of such a bargain as the appellee seeks to enforce against ·the wife, nor the making, in fact, of such a trade in any manner whatever, by her or her authority; nothing binding upon her conscience which forbids her to repudiate the trade, and equity will not interpose to protect the purchaser against her superior legal rights.

The case most like the present to be found among the decisions of this court is that of Edwards v. Dismukes, 53 Tex., 605. It was there held that the delivery by the husband of a deed properly exe-·cuted by the wife in violation of her instructions, though the grantee had no notice of the instructions, would not pass the title of the wife if the grantee had notice that the delivery was unauthorized. The principle of that decision is applicable to this case and in accordance with the views expressed in this opinion.

It is evident from what has already been said that the appellant can set up no claim to the improvement placed by him upon the premises. He cannot be a purchaser in good faith, as the slightest use of the means in his power would have led him to know that he was getting no title to the land, purchasing it as he did under the circumstances. He closed his eyes to facts which he could easily have known, and took the risk of purchasing from the wife's agent under an instrument on the face of it not binding upon her, if the trade was consummated upon the terms on which he proposed to buy, and he must bear the consequences, as in other cases which are lacking in good faith. Whilst there may be cases where a purchaser, claiming through a conveyance to his vendor, which was defectively executed by a married woman, may set up good faith and claim the value of of his improvements (26 Tex., 747; 48 Tex., 583), this right does not belong to one who claims title by a direct deed from the wife to himself, obtained through a fraud of which he is chargeable with full knowledge.

We therefore are of opinion that the court erred in rendering judgment for the defendant below. The judgment is reversed, and the court proceeding to render such judgment as should have been rendered below, will decree a recovery of the land in controversy by the appellant, and all costs both of this court and of the court below.

### ON MOTION FOR REHEARING.

WILLIE, CHIEF JUSTICE.— We are asked to reconsider that portion of the opinion heretofore delivered in this case which denies to the appellee the right to recover the value of the improvements placed

by him upon the land in controversy. No objection is raised to so much of our decision as decrees the land itself to the appellant, but the ruling in that respect is acquiesced in as correct.

The judgment of the district court having been rendered in favor of Bammel, who was defendant below, that court had no occasion to pass upon the question of improvements, and it was not discussed upon appeal either in the briefs or argument of counsel. In the exhaustive arguments held by the respective counsel upon the motion for rehearing, the question is thoroughly discussed and all the authorities bearing upon it collated and commented upon.

We have, therefore, been able to give the subject a more satisfactory investigation.

The appellee was denied pay for his improvements by our original opinion for the following reasons: At the time of his purchase he was charged with notice that Mrs. Cole had agreed to sell the land for $1,500, and had acknowledged a deed with that consideration expressed in it. He had purchased from her agent for the sum of $1,000, and hence could not defend against a suit brought by her to recover the property unless he could show authority from her to the agent to sell at the lower rate, or that she had ratified the sale by subsequent conduct. No previous authority to the agent was shown, and it was affirmatively proved that, when the terms of the sale were made known to her, she expressly repudiated it by refusing to receive any part of the purchase money. It was not shown that this repudiation was made known to Bammel, nor upon the question of title was this at all necessary. He bought from one not authorized to sell upon the terms of the purchase, and he took the risks of ratification by Mrs. Cole, and of a loss of the property in case of a repudiation by her. His title depended upon the occurrence or non-occurrence of the ratification, not upon whether or not the facts in reference to it were communicated to him. Hence, no apparent acquiescence in the sale deduced from a long continued failure to sue for the property, or to give notice of an intention to do so, could have any effect upon Mrs. Cole's title to the land, or her right to recover it from the appellee. It may, however, have much effect upon the good faith of Bammel's possession and his right to recover pay for his improvements.

The facts as presented by the record before us show that Bammel, after his purchase, commenced improving the land, and continued so to do, without any objection on the part of Mrs. Cole, or any knowledge of her repudiation of the sale, or of her intention to sue for the property. This silence on her part continued for over seven years,

during which time the property was greatly improved and enhanced in value by the efforts and at the expense of the appellant.

The case was that of a purchase with notice from one having no power to sell, accompanied with an apparent acquiescence in the sale by the party who alone could defeat it, continued for so long a period of time as to lead the vendee to believe that the true title would not be asserted against him.

The result of our decisions in like cases is that the mere fact that a party buys from one who he knows has no power to sell is not sufficient to make him a possessor in bad faith. There may be attending or subsequent circumstances which will relieve the possession of such a character and entitle the vendee to pay for his improvements. Sartain v. Hamilton, 12 Tex., 219; Dorn v. Dunham, 24 Tex., 366; French v. Grenet, 57 Tex., 273.

What circumstances will be sufficient cannot well be reduced to any general rule. It would seem, however, that when the only defect in the title is in the power under which it was executed, and such as the true owner could waive by parol or acts done in pais, any conduct of the latter which led the possessor to believe that such waiver had taken place or would occur, or that the owner had acquiesced in his possession and improvement of the land, would constitute him a possessor in good faith.

Mrs. Cole, with full knowledge that Bammel was improving the property in the belief that he had good title to it, stood by for seven years and permitted him to make the improvements and gave him no notice that she did not approve the sale or would sue for the land.

We think, under these particular facts taken in connection with the circumstance that the only defect in Bammel's title was such as Mrs. Cole could waive by her conduct, that a sufficient case of good faith is made out to entitle Bammel to pay for his improvements.

Indeed, this court has held in two cases that one who buys, knowing that his vendor has a deed from a married woman defectively acknowledged, may be a possessor in good faith. Hill v. Spear, 48 Tex., 583; Berry v. Donley, 26 Tex., 737.

No reasons are given in either case for this ruling of the court, but it must rest upon the ground that the defect was such as the wife could waive, and, not having taken advantage of it, the purchaser might in good faith suppose she would waive it, and with her acquiescence had improved the property.

A rehearing will be granted upon the question of improvements alone, and for a more definite ascertainment of the facts bearing upon

that question alone, the cause will be remanded to the court below, with the following instructions:

1st. That the said court enter judgment in behalf of the plaintiff below for the recovery of the property in controversy and all costs of suit.

2d. That it hear evidence as to the adverse possession of the defendant, and ascertain whether such possession has been held in good faith, according to the principles laid down in this opinion, for at least one year next before the commencement of this suit.

3d. If it shall be found that such possession has not been thus held in good faith, the judgment heretofore directed to be entered for the plaintiff shall include also a recovery of the improvements upon the property and the issuance of a writ of possession.

4th. If it shall be found that such possession has been thus held in good faith, the court shall ascertain the value at the time of the trial of such improvements as have been made upon the lots before the filing of this suit, not exceeding the amount to which the value of the premises is actually increased thereby.

5th. The court shall further proceed in the trial of the question of improvements and rents, and in setting off one against the other, and in rendering judgment as to said rents and said improvements, in all respects according to the second and third subdivisions of art. 4814, and according to arts. 4815 to 4820 inclusive, of the Revised Statutes of the state of Texas.

. With which directions the judgment is reversed and the cause remanded.

REVERSED AND REMANDED.