ANNIE L. ETHERIDGE ET AL. V. R. H. PRICE ET AL.

No. 6108.

1. **Ratification—Husband and Wife.**—The ratification by a principal of the agent's act which was unauthorized, to be complete, must be upon full knowledge of the obligation and its considerations; hence the wife who has joined her husband (who had negotiated a sale of her land) in the execution of a deed will not be bound by rep-

resentations made by him, and not in her presence or with her knowledge, while negotiating the sale, and which were not contained in the deed afterwards signed by her. See statement of case for the terms of a note which it was held were not sufficient to charge the wife with notice of the representations made by the husband in negotiating a sale of her land.

2. **Case Followed.**—Cannon v. Boutwell, 63 Texas, 626, adhered to.

APPEAL from Williamson.   Tried below before Hon. A. S. Walker..

The note sued on by appellants is as follows:

"$1625.00.                    GEORGETOWN, TEXAS, October 15, 1883.

" On December 15th, 1884, after date, I promise to pay Annie L. Etheridge the sum of $1625 value received, with interest at the rate of ten per cent until paid.   This note is given for part purchase money for a tract of land described in deed of even date hereof, and a vendor's lien is in said deed retained to secure due payment of the same; and whereas there is now pending on appeal to the Supreme Court of the State of Texas from the District Court of Williamson County a suit by W. J. Montgomery against S. G. Etheridge et al. for portion of the land described in said deed, and for which this note is given; and whereas there is. also claim made by the heirs of Chadwick, deceased, for a portion thereof,. it is agreed and understood that this note shall remain unpaid and nonnegotiable until said suit and claim are settled, and if it becomes necessary for R. H. Price, payor hereof, to pay off and settle said suit or claim or any portion thereof, then the amount so paid shall be deducted from this note and the balance be payable to said Annie L. Etheridge, payee therein, in the city of Georgetown, Texas.

" R. H. PRICE."

The deed was an ordinary warranty deed from appellants to appellee Price, consideration $6500, half cash and remainder in two equal installments, payable 15th of October and 15th of November, 1884, the deed bearing date 15th of October, 1883.   The description is by field notes,. giving metes, bounds, and land marks with particularity; deed duly acknowledged by the wife on the 19th of October, 1883, and recorded 15th of November, 1883.

The field notes in the deed from appellants to appellee Price are as follows.   The deed was put in by plaintiffs:

"Beginning at a stake the northwest corner of James Wallas survey from which a cottonwood bears north 47 east 500 varas cross a spring branch 1900 varas to a stake; thence north 1900 varas to stake; thence south 19 east 1000 varas a spring branch 1900 varas to a stake from which a live oak north 50 east 50 varas; thence south 71 west 1900 varas to the beginning."

It was agreed by the parties that the suit of Montgomery v. Etheridge and the claim of the Chadwick heirs referred to in the note had both been

settled, and that the judgment of the District Court in the case of Price v. Knavick was affirmed by the Supreme Court.    Here plaintiff closed.

Defendant read in evidence the judgment in the case of the Chadwick Heirs v. R. H. Price, in which they recovered of him.    The tract recovered runs over and east of a wire fence 618 varas, taking off the west side of the tract Price claimed he bought of Mrs. Etheridge so much, which the parties call 240½ acres.    Price was allowed $924.28 for improvements made in good faith, and the Chadwick heirs $40 for use and occupation. The land exclusive of improvements was valued at $6 per acre.    The judgment followed the findings, and execution was stayed for one year for adjustment and payment.

The findings of the facts and law by the trial judge were as follows:

"1.    The note already set out.

"2.    The land for which the note was given was the separate property of the plaintiff Annie Etheridge, wife of the coplaintiff, at sale and at this time.

"3.    The plaintiff S. G. Etheridge made the sale with Price, showing (i. e., described it so as to be understood) him the west boundary of the Jones survey as by him claimed, which was at the time and had been for several years enclosed with a wire fence.

"4.    By suit in this court the Chadwick heirs, July 8, 1884, recovered of Price 240 acres off of the west side of the land as sold to Price—i. e., the west boundary of the Jones tract was fixed so far east as to leave 240 acres between said line so ascertained and the wire fence line upon which as west line the parties contracted.

"5.    That at the time plaintiff sold to defendants he employed counsel, T. W. Stratton, to defend against the Chadwick claim; he did defend and lost.

"6.    On January 19 the defendant Price paid costs of suit in District Court and Supreme Court, $107.25, less than amount of interest.

"7.    On April 28, 1886, Price paid off and settled the claim of the Chadwick heirs to said 240 acres, in fact paying $8 per acre, which was valued at $6 per acre in the suit of Chadwick v. Price.    Total $1440, add cost $107.25, total $1547.25.

"There was due on the note, computing ten per cent interest from date on $1625 to April 28, 1886, amount $2037.05; deduct amount of costs paid and amount to clear the land $1547.25, leaves $489.80; add three months interest $12.24, makes $502.04.

"9.    The proceedings taken by Price against Knavick for the east side of Jones tract were excluded as irrelevant.

"10.    There was no mistake or disagreement between the parties as to the place acted upon as the west line of the tract sold to Price.

"11.    There is no tender of any money in court.

"Upon the facts the court holds the law:

"1.   The note bore interest from date.

"2.   That it contemplated that Price pay off any claim the Chadwick heirs should establish.   Payment and costs of suit therein both to be deducted as credits upon the note.

"3.   The note was held to stipulate for the protection of Price against the Chadwick heirs to that recovered by them east of the wire fence, which was taken on the trade between Price and plaintiff to be the west line of the tract bought by Price.

"4.   The acceptance by plaintiff of the note and money paid and the collection of one of the purchase money notes constitute an estoppel binding the plaintiff Annie L. Etheridge.

"Judgment will be rendered for plaintiff for $502.04 and costs, and decree foreclosing vendor's lien."

*T. W. Stratton* and *James H. Robertson,* for appellants.—The contract of sale being in writing and no latent ambiguity being shown, it was error to permit a special warranty to be engrafted upon the contract by showing a contemporaneous verbal agreement to that effect.   Bedwell v. Thompson, 25 Texas Supp., 245; East Line R. R. Co. v. Garrett, 52 Texas, 133; Weir v. McGee, 25 Texas Supp., 20; Hughes v. Sandal, 25 Texas, 165; Self v. King, 28 Texas, 552; Johnson v. Granger, 51 Texas, 43; Norris v. Hunt, 51 Texas, 614.

The plaintiff Annie L. Etheridge, a married woman, could not be bound by any representations or verbal warranty made by S. G. Etheridge as to her separate estate.   She could only be bound to the extent of her deed made, executed, and acknowledged separate and apart from her husband according to law.   Rev. Stats., arts. 4310, 559; Cannon v. Boutwell, 53 Texas, 626; Reagan v. Holliman, 34 Texas, 404; Cross v. Everts, 28 Texas, 532; Roy v. Bremond, 22 Texas, 628; Fitzgerald v. Turner, 43 Texas, 79; 25 Texas Supp., 109; 4 Texas, 83; 8 Texas, 176; 16 Texas, 315; 65 Texas, 28; 11 Texas, 329.

*Willie, Mott & Ballinger,* also for appellants.

*Walton, Hill & Walton,* for appellees. — 1.   The consideration of the note sued on was not attacked.   The plea only set up the conditions of the face of the note and laid basis for a deduction from the note for which its own terms provided on a contingency, and that contingency was pleaded as having come to pass.

2.   There was no special warranty as warranty pleaded, but only a special warranty in the nature of representation of particular facts that induced the purchase.   It is not claimed that Mrs. Etheridge was bound by the naked representations of her agent, save as *res gestæ* of the transaction, on which she was put on notice by the terms of the note she received, accepted, and acted on.

3.   Appellants sold the Jones survey, and represented or affirmed a representation that it was bounded on the west by artificial mark on the ground, and agreed if it did not reach that point they would compensate the purchaser for the loss falling to him by such failure.

COLLARD, JUDGE.—The third finding of the court upon the facts was as follows:

" The plaintiff S. G. Etheridge made the sale with Price, showing him the west boundary of the Jones survey as by him claimed, which was at the time and had been for several years enclosed with a wire fence." The court concluded as the law of the case that Mrs. Etheridge was bound by the representations of her husband, she having accepted the money paid and the notes given for the purchase money of the land. The note sued on stipulated for the protection of Price against the claim of the Chadwick heirs to a portion of the land conveyed by the deed.

The evidence sustains the finding of the court that S. G. Etheridge represented to Price at the time he was negotiating with Price for the sale that the Jones survey extended west to the wire fence. After the sale the Chadwick heirs sued and recovered of Price a strip 618 varas east of the wire fence, but the evidence also establishes the fact that the land recovered by the Chadwicks was no part of the Jones survey as described in Mrs. Etheridge's deed. The deed contained a covenant of general warranty. The deed, the notes, and the cash payment were expressed by Price to her at Galveston, some two hundred miles away, and she signed the deed and accepted the notes and the cash payment in ignorance of the representations made by her husband. Under these circumstances, was the conclusion of the court below correct that she was bound by the representations of her husband?

It is a general rule that where the vendor represents his land to be in one place and the vendee relies upon such representations and is so induced to purchase, and it turns out that the land is in another place, the sale will be set aside, or other appropriate relief will be granted. It is also a well established rule that where the principal accepts the benefits of a contract made for him by his agent he must also assume the obligations of the contract, even to the extent of answering for the fraud or misrepresentations of the agent. The fraud must be a part of the *res gestæ*, and the acts claimed to be fraudulent must be within the scope of the agent's authority. Mech. on Agency, sec. 775; Story on Agency, 126, 127, 134, 135.

A ratification by the principal either express or implied is equivalent to precedent authority, but in general the ratification to be complete must be upon full knowledge of the obligation and its considerations. Mech. on Agency, sec. 129; Reese v. Medlock, 27 Texas, 125, and authorities cited.

The husband is not by implication of law the agent of the wife. On the contrary, it is held in this State that the wife can not by express power of attorney constitute her husband her agent to convey her land. Montgomery v. Noyes, *supra,* 203; Cannon v. Boutwell, 53 Texas, 626.

Our law for the purpose of protecting a married woman has imposed certain well known restrictions as to the method of conveying her separate estate in land. She must be joined by her husband, but to guard against undue influence and coercion on the part of the husband, and so that she may act with perfect freedom and full understanding of her acts, it is required that before her deed can have effect as a conveyance her acknowledgment of it must be taken before an officer privily and apart from her husband, and among other requirements the instrument must be then and there shown and "fully explained to her." The object of the law is that she may not only act freely but understandingly. In a ratification of a sale made by her husband, how can she act understandingly of obligations that arise from representations made out of her presence by her husband without her knowledge or authority, which representations are not contained in her deed?

In an Iowa case (where the husband could act as agent of the wife) it was said: "The husband may act as the agent of the wife. In order to bind her, however, he must be previously authorized to act as her agent, or she must subsequently, with express or implied knowledge of his act, ratify it. The evidence necessary to establish a ratification by the wife of a contract made by her husband as her agent must be of a stronger and more satisfactory character than that required to establish a ratification by the husband of the act of the wife as his agent, or than as between independent parties. * * * Of course it is necessary in every case to bind her that he should at least claim to act as her agent, and her ratification should be shown by those unmistakable acts or declarations which evince a knowledge of the contract by which she is sought to be bound and an intention to adopt or ratify it as her own."

The only use we have for the quotation above is specially to show that a ratification by the wife of unauthorized acts of her husband to be binding upon her must be upon full knowledge of the acts themselves.

It is claimed by the appellee that the deed executed by Mrs. Etheridge was a ratification of the representations made by her husband to Price pending the negotiations that the west line of the survey to be conveyed was at the wire fence. The deed contains no such stipulations. It merely describes the Ben D. Jones survey as 1900 varas square, calling for lines, stakes, and corners; it makes no mention of the wire fence. The deed actually did convey the Jones survey and its excess of 240 acres over and above the area described by the length of the lines in the deed. The deed contains a general warranty of the land conveyed. Price was made to believe by Etheridge that the line extended to the wire fence,

but in truth it did not—it lay further east; but all of it was there as described in the deed, besides a considerable excess. It was not in conflict with other surveys—especially not with the claim of the Chadwick heirs. Their suit only demonstrated that the Jones survey lay 618 varas further east than Etheridge said it was. The deed did not declare it went to the wire fence, nor did Mrs. Etheridge say so. There was nothing in the note from which it can be said that she knew or was notified that the land was represented or was thought to extend to the wire fence. The terms and language of the note only bound her to protect Price against the claim the Chadwick heirs might set up to any part of the land. What part? The language is, that whereas there is pending " a suit by W. J. Montgomery against S. G. Etheridge et al. for a portion of the land described in said deed, and for which this note is given; and whereas there is also claim made by the heirs of Chadwick, deceased, for a portion thereof." What portion? Evidently a portion of the land described in the deed, and nothing more. We repeat again that there is nothing in the note to put Mrs. Etheridge upon notice that her husband had represented that the land was bounded by the wire fence, nor is there anything in the deed to do so. Her warranty bound her to make the title to the land described in the deed good, and the agreement in the note was to protect Price against the Montgomery suit and against the claim of the Chadwick heirs, for and to any of the land described and conveyed in her deed.

The deed and the note, either or both, was not ratification of anything further than the sale of the land conveyed in and described by the deed, she being ignorant of any other fact by which she is sought to be bound. She knew of nothing more and acknowledged nothing more in her privy examination.

In addition to authorities cited see Weir v. McGee, 25 Texas Supp., 20; Hughes v. Sandal, 25 Texas, 162; Cole v. Bammel, 62 Texas, 108; Newman v. Farquhar, 60 Texas, 644; Mech. on Mort., secs. 112, 127, 63.

We do not think any breach of the warranty in Mrs. Etheridge's deed was shown on the trial, nor do we find that there should be any deduction from the amount due on the note on account of the Chadwick suit.

We are of opinion the case should be reversed and remanded.

*Reversed and remanded.*

Adopted April 30, 1889.