SAN ANTONIO REAL ESTATE, BUILDING AND LOAN ASSOCIATION v.
SOLON STEWART AND WIFE.

Decided November 20, 1901.

**1.—Limitations—Estoppel—Default Maturing Notes.**

Defendants, a husband and wife, executed for a debt secured by a mechanic's lien on their homestead a series of notes, one maturing each month, with stipulation that default in the payment of any three of the notes should mature the entire debt. Default was made as to payment of three of the notes, but the husband paid them several months later, and at different times thereafter paid others of the notes, the parties acting as though no default had taken place.

'Suit was brought for the remainder of the debt more than four years after the default on the three notes, but at a time when none of the notes sued on were barred on their face. Held, that the default in the payment of the three notes matured the entire debt, and limitations ran against it from that time, and that the acts of the husband, consisting of promises to pay the notes with a plea for further time, coupled with a promise on the holder's part not to sue, did not estop the husband from asserting the bar of limitations.

'2.—Mechanic's Lien on Homestead—Foreclosure—Wife Necessary Party.

The wife is a necessary party to an action to foreclose a mechanic's lien on the homestead in the execution of which she necessarily joined.

.3.—Estoppel Against Wife—Lien on Homestead.

In a suit on notes in connection with which foreclosure of a mechanic's lien on the homestead is sought, acts of the husband constituting as to him an estoppel to plead limitations would not estop the wife, where she was not connected with such acts and was guilty of no positive fraud..

Appeal from Bexar. Tried below before Hon. S. J. Brooks.

*Onion & Henry,* for appellants.

*Denman, Franklin, Cobbs & McGown,* for appellee.

FLY, Associate Justice.—This case was instituted by appellant against Solon Stewart and his wife, Georgia C. Stewart, to recover a debt evidenced by forty-three promissory notes for small sums, and to foreclose a mechanic's lien on the homestead of appellees. A plea of limitations was interposed by appellees, and on that plea judgment was rendered in their favor.

The judgment was affirmed by this court at its last term, but pending a motion for rehearing, a question was certified to the Supreme Court, and the statement of the case and the facts found in connection therewith are adopted as the conclusions of fact of this court, with the additions hereinafter made. The statement and findings of fact are as follows:

"On August 19, 1892, Solon Stewart and his wife, Georgia S. Stewart, desiring to build a home in the city of San Antonio, entered into a contract with the San Antonio Real Estate, Building and Loan Association to obtain the sum of $2376 with which to erect a home, and at the same time executed and delivered to said association seventy-two promissory notes payable in monthly installments, including interest from date up to September 1, 1898, and at the same time made, executed, and delivered to said association a builder's and mechanic's lien in writing, properly acknowledged so as to bind the homestead, and in that lien, which is referred to in each of the notes, it was provided 'that whenever any three of said notes or monthly payments remain unpaid, in whole or in part, after due, then and thereupon the balance of said notes remaining shall be due and payable, and said association may at any time thereafter proceed to foreclose said debt and lien.' The money was used to erect a home for Stewart and wife. Stewart defaulted in payment of the notes that became due in January, February and March,

1894, and paid nothing on any of the notes due in 1894 until October of that year, when he paid the January note, and in December paid the February note, and afterwards the March note of 1894. On the first days of April, May, June, July, August, September, October, November, and December, 1894, and January, February, and March, 1895, and at various times for many months thereafter the representative of the association saw Stewart and urged him to pay the notes that were past due, and each time Stewart begged for further time, verbally promising to pay the notes. Further time was granted by the association, and Stewart paid off at different times twenty-nine of the seventy-two notes, among the number being the three notes due respectively in January, February, and March, 1894. Both parties acted in connection with the notes as though no default had taken place by reason of failure to pay the installments due for the first three months of 1894. Payment was never refused by Stewart until just before the suit was instituted. On March 1, 1900, more than four years after default had been made in the payment of the three notes due in January, February, and March, 1894, but at a time when none of the remaining unpaid notes were barred by limitation on their faces, this suit was instituted, and Stewart interposed a plea of four years limitations on the ground that all the notes became due in March, 1894."

We find, in addition, that the mechanic's lien sought to be foreclosed by appellant was given by Solon Stewart and his wife, Georgia C. Stewart, the property being their homestead; that the notes were executed by them, and that in all the negotiations between appellant and Solon Stewart after all the notes were matured by the default in the payment of the three notes that had on their face become due, Mrs. Stewart took no part, and never consented to any agreements or acts of her husband in regard to the debt, nor had any knowledge of them.

It is the settled law in Texas that where it is stipulated in promissory notes, or in an instrument made at the same time in connection with them, that default in the payment of one or more of the notes which are to become due at different times, will mature the whole of them, they will all become due at such default, unless there is a stipulation in the notes or other instrument giving the payee the right to choose whether the whole debt shall become due or not. Harrison v. Reigor, 64 Texas, 89; Rogers v. Watson, 81 Texas, 400; Morrill v. Hoyt, 83 Texas, 59; Dodge v. Signor, 18 Texas Civ. App., 45.

The rule above stated was reiterated in the answer to the certified question in this case, and it was held that, under the terms of the contract on which this suit is based, the whole debt became due upon default in payment of three of the notes, and limitation began to run from that date. There can be no possible doubt about this proposition of law, and it also would seem to follow that when the debt became due by default in the payment of the three notes, it occupied the same position that any other matured debt would occupy, and that in order to cause the running of the statute to cease, there should, as provided

by law, have been an acknowledgment in writing by the makers of the notes as to the justness of the claim. It is undoubtedly true that "the acknowledgment referred to in the statute is one which is to take the case out of the statute of limitation, and is therefore one made of a cause against which the statute runs," and that is the position, it seems to us, that is occupied in this case. The debt was due, the statute had been put in motion, and it is a familiar principle that when time has commenced to run in any case, it will not cease to do so by reason of any subsequent event which is not within the saving of the statute. There was no agreement in writing or otherwise to waive the statute of limitation, but it is insisted that the acts of Solon Sewart have estopped him and his wife from pleading the statute of limitations. Those acts consisted of promises to pay the three first notes when they became due, a plea for further time and a promise upon the part of appellant not to sue. While holding that the acknowledgment referred to in the statute which is necessary to take the case out of the statute of limitation applies to a cause of action in which limitation runs, and while it was held that the statute had begun to run, it is further held that the parties, by their acts not evidenced by any writing, may estop themselves from setting up the bar of the statute.

Had a verbal agreement been made between the parties before the default in payment had been made, that such default should not cause the whole debt to mature, no doubt the makers of the notes would have been estopped from claiming the bar of the statute; but we held that when a debt had become due and limitation had begun to run, "no acknowledgment of the justness of the claim made subsequent to the time it became due shall be admitted to take the case out of the operation of the law, unless such acknowledgment be in writing and signed by the party to be charged thereby." It would seem that, if acts amounting to an equitable estoppel can stop the running of limitation in a case like this, they can do so in any case, and that the provisions of article 3370 will fall to the ground. The Supreme Court has held, however, that the article does not apply to a case where a whole debt is matured by a failure to pay a part of it, and we recognize that the decision is the law of this case, and what has been written was not done with the intention of questioning its binding force on this court in this case, but for the purpose of showing the grounds upon which our former opinion was based.

The Supreme Court held that if the facts of this case would raise an estoppel, it must be one designated as estoppel by waiver. The rule is that "where, by the course of conduct of one party to a contract, entitled to the performance of certain terms or conditions thereof, the other party has been led to believe, as a man of average intelligence, that such performance will not be required, until it has become too late to perform, or until to insist upon performance will work material injustice, the person who has so conducted himself is barred from asserting the right he had." Big. on Estop., chap. 20. In this class of estoppel the conduct of the party is treated as a waiver, and not as a representation, and knowl-

edge of the facts by the person claiming by estoppel would not preclude a recovery on the plea of estoppel. The party claiming the benefit under such waiver, however, must show that he was misled by the confidence reposed in the one from whom he is claiming the benefit, and that the conduct was such as to mislead an ordinarily prudent man.

It was not in proof that the question of whether the effect of default in the payment of the three notes on the maturity should be disregarded or not, and there was no promise not to plead the statute against the claim, and while this court might, under the decision of the Supreme Court, primarily have drawn the inference of estoppel from the conduct of Stewart, still the matter has been passed upon by the district judge, and we do not feel that we can hold that he was not justified in finding that the facts did not constitute estoppel as to Solon Stewart.

As before stated, Mrs. Stewart was not connected with any of the negotiations between appellant and her husband, and the question is presented, can her rights under a contract to which she was a necessary party be so changed by a waiver of her rights as to extend the time when the debt evidenced by the contract shall become due? It is a rule in Texas that in order to estop a married woman it is essential that she should be guilty of positive fraud, or of some act of concealment or suppression of facts which in law would be equivalent thereto. Johnson v. Bryan, 62 Texas, 626; Etheridge v. Price, 73 Texas, 597; McLaren v. Jones, 89 Texas, 131; Speer, Marr. Wom., sec. 134.

This rule is established because of the fact that a married woman labors under a disability, and all who deal with her are chargeable with the knowledge of such disability and that she can not be bound except in the manner prescribed by statute. Under the operation of this rule Mrs. Stewart could not be bound by the acts of her husband, no matter if they did constitute estoppel, because she is not connected with them in any manner.

But it is argued that after the incumbrance of the mechanic's lien was placed upon the homestead, which was not shown to be her separate property, the husband had the power to renew the note and make any other arrangements necessary in connection with the debt; and decisions holding that the husband has the power and authority to adjust equities, and make any bona fide arrangements that he may deem proper in paying off incumbrances on the homestead, have been cited. It is well settled that the husband alone may in good faith adjust equities existing prior to the complete investiture of homestead rights, but in no case has it been held that he has such authority in regard to debts contracted after the homestead right has been perfected, and which have become a burden on the homestead through the necessary participation of the wife in the statutory mode. While there are no decisions on the subject in this State, still, in cases where the wife has given a mortgage on her separate estate to secure a community debt, it is held that there could be no renewal of the debt or extension of time by the husband alone that would be binding on the wife. Wofford v. Unger, 55 Texas, 480.

As to her separate property and her homestead, the same formalities are required to place an incumbrance upon the property, and it is reasonable to conclude that the husband would have no more powers as to the one than as to the other. In the case of Milburn v. Walker, 11 Texas, 344, it was held that the husband could not revive a claim that was barred against the separate estate of his wife; and in the Wofford-Unger case, referring to that decision approvingly, it was said: "If he has not the right to revive it, he would not have the right, by acknowledgment and a promise, to prevent the bar of the statute in the first instance." Applying that proposition of law to this case, it is clear that the husband would not have any authority to extend the time of payment of a debt created by him and his wife on property already a homestead, for it would not be asserted that the husband could by his act revive a mechanic's lien on a homestead that had been lost by the debt being barred by limitation.

In other States the question now under consideration has been directly decided, and it has been held under statutes forbidding a husband to mortgage the homestead without the consent of the wife that he can not enlarge the terms of a mortgage previously given, nor renew it, nor extend the statute of limitations concerning it. Dunn v. Buckley, 56 Wis., 190; Campbell v. Babcock, 27 Wis., 512; Spencer v. Precendall, 15 Wis., 666; Barber v. Babel, 36 Cal., 21; Thompson v. Pickel, 20 Ind., 490; Hardman v. Bank (Kan.), 61 Pac. Rep., 984; Jenkins v. Simmons, 15 Pac. Rep., 528.

We conclude that the husband has no power to renew a debt against the homestead, extend time of payment, or in anywise change the same after the homestead right has been perfected; and, as said in Eckhardt v. Schlecht, 29 Texas, 129, "It can not of course be supposed that the fraudulent declarations or conduct of the husband, to which the wife is not privy, will be held in equity to pass title to the homestead, or create any charge which the husband could not make by deed."

The power given by article 2968, Revised Statutes, to the husband to dispose of the community property, has no reference to community estate which has become fully invested with the homestead character. The Constitution has provided the method of charging a homestead with a mechanic's or builder's lien, and to hold that as soon as the lien is given the wife loses all power over it, and the husband is invested with the same authority in connection with it as with the other community estate, would be to render nugatory the constitutional protection thrown around a wife's homestead.

It is argued by appellant that Mrs. Stewart was not a necessary party to foreclosure proceedings, and that the question of estoppel as to her is immaterial. It has never been held in this State that the wife is not a necessary party to a suit to foreclose a mechanic's lien on the homestead and we are of the opinion that she is a necessary party, and a judgment obtained in such case without making the wife a party would be void. Campbell v. Elliot, 52 Texas, 151; Thompson v. Jones, 60 Texas, 94;

Jergens v. Schiele, 61 Texas, 255; Odum v. Menefee, 11 Texas Civ. App., 119.

In the Jergens-Schiele case cited it was said: "If there was any defense that could have been urged growing out of her homestead rights which would have defeated the action, then she was a necessary defendant in the case." In that case it was held that the wife was not a necessary party because she had no homestead right to urge. A case illustrative of the point is where a suit is brought for the purchase money on a homestead. The wife would not be a necessary party, because she has no homestead; but in a case where she might urge the invalidity of her acknowledgement, or show fraud or plead the statute of limitation to defend her homestead, her rights can not be precluded unless she is made a party.

We conclude that the facts did not raise an estoppel as against Solon Stewart in this case, and if they had done so, Mrs. Stewart would not be bound by such estoppel, and in either event there was no error in the judgment of the trial court. The judgment is affirmed.

*Affirmed.*

### ON MOTION FOR REHEARING.

There is nothing presented in the motion for rehearing that tends to establish that there is any error in the opinion of this court. That part of it relating to the opinion in answer to the certified question was written with the most profound respect for the Supreme Court, and with the intention merely to give reasons for holding as we did in our original opinion.

In connection with the position of this court on the matter of limitations, we desire to call attention to Wood on Limitations, third edition, section 41, page 101. It is stated by the author that the person for whose benefit the statute inures may, by contract, waive his right to set up the statutory bar, and in that case the statute is quieted up to, and begins to run afresh from, the time when the contract or agreement was entered into; but while he may by a positive act, as by an agreement not to set up the statute, deprive himself of its benefits, he can not be prevented from relying upon it at law, by a merely equitable estoppel." As said in the case of Bank v. Waterman, 26 Connecticut, 324, which is cited by Wood: "Strong equitable considerations in favor of the present plaintiffs seem to grow out of the fact that they were actually betrayed into ignorance of their rights by the wrongful acts of the defendant himself; that they were misled by the very record to which they might and should rightfully refer for knowledge of their rights, and of which the defendant was himself the author, having verified it under his official oath. It is palpably unjust for the defendant to set up the statute as a defense under such circumstances. To do so is, in one sense, taking advantage of his own wrong. Yet it is difficult to see that he is not, by the clear provisions of

the statute itself, protected in so doing; nor are we aware of any well established doctrine by which a party, in a court of law, can be prohibited, on the score of equitable estoppel, from defending himself under a public statute, designed to be of universal application in the matter of legal remedies." We keep in view that our courts have both legal and equitable jurisdiction, but if they did not have, and separate courts were provided, they would be bound by the rule that "equity follows the law," that it obeys it and conforms to its mandates, and where a particular remedy is given by law and that remedy bounded and prescribed by particular rules, it would be improper for a court of equity to take it up and extend it farther than the law allows.

The motion for rehearing is overruled.

*Overruled.*

Writ of error refused.

James, Chief Justice, did not sit in this case.