W. B. SKIRVIN v. GEORGE W. O'BRIEN.

Decided April 18, 1906.

**1.—Power of Attorney by Husband and Wife—Death of Husband.**

A power of attorney, jointly and duly executed by husband and wife to sell the wife's separate property, is not revoked by the death of the husband.

**2.—Ratification.**

The burden of proving ratification is on the party asserting it. There can be no ratification without full knowledge of the facts. Ratification of deed of agent must be by deed of principal. Mere delay in repudiating will not have the effect of ratifying.

**3.—Powers of Attorney—Strict Construction.**

Such instruments as powers of attorney must be strictly construed; under no circumstances will the principal be bound beyond the plain import of the language of the instrument. A power to sell and convey does not authorize a conveyance in settlement of adverse claim against principal.

Appeal from the District Court of Jefferson. Tried below before Hon. L. B. Hightower.

*Xavier Ryan,* for appellant.—The death of one joint principal revokes the authority of an agent. Cox v. Bray, 28 Texas, 248; Conner v. Parsons, 30 S. W. Rep., 83; 1 Am. and Eng. Ency. of Law, pp. 12-23 (2d ed.); Travers v. Crane, 15 Cal., 12; Johnson v. Wilcox, 25 Ind., 182; Marlet v. Jackman, 3 Allen, 287 (Mass.); Lourie v. Salz, 75 Cal., 353; Galt v. Galloway, 4 Peters, 333.

The ratification of the unauthorized act of an agent will not be presumed by failure of the principal to disaffirm the act. The burden of proving ratification of the unauthorized act of the agent devolves upon the party asserting it and there can be no binding ratification without full knowledge. Reese v. Medlock, 27 Texas, 123; Storey on Agency, sec. 90.

Powers of attorney, unlike deeds and wills, are to be strictly construed. The authority delegated is limited to the meaning of the terms in which it is expressed, and when the power to perform specific acts is given and general words are also employed, such words are limited to the

particular case authorized.  Frost v. Erath Cattle Co., 81 Texas, 505; 1 Devlin on Deeds, sec. 358; Billings v. Morrow, 68 Am. Dec., 235; Mech. on Agency, secs. 318, 326, 329; 30 Cal., 408.

*O'Brien, John & O'Brien,* for appellee.—A husband is only a formal party to a conveyance made by a wife under coverture of her separate estate; the purpose being to assure her the benefit of his council and advice, and the purpose of the privy acknowledge is to guard her against undue influence on his part.  Nolan v. Moore, 72 S. W. Rep., 583; Tippett v. Brooks, 67 S. W. Rep., 512; Schley v. Pullman Car Co., 25 Fed. Rep., 890; Bray v. Clapp, 6 Am. St. Rep., 197.

An unauthorized act performed by an agent is assumed to have been ratified by long acquiescence.  Glasscock v. Nelson, 26 Texas, 151; Ward v. Williams, 79 Am. Dec., 385.

A power of attorney authorizing an agent to sell for money or other consideration, and not only to grant and sell, but to confirm title to land in others is sufficient to authorize a conveyance in consideration of a locative interest.

FLY, ASSOCIATE JUSTICE.—This is an agreed case under article 1414, Revised Statutes.  The agreement is as follows:

"We, the parties to the above styled and numbered cause, whose names are signed hereto, being all of the parties to this suit, hereby agree that the following is a brief statement of this case and of the facts proven on the trial hereof:

"1.  This is a suit of trespass to try title, filed in the District Court of Hardin County and transferred by agreement of parties, to Jefferson County.  The land in controversy is 160 1-3 acres out of the E. Pulsifer 1-3 league in Hardin County, Texas, plaintiff's petition is in regular statutory form and defendant's answer is general denial and plea of not guilty.

"2.  The following facts were proven:

"The land in controversy was located by virtue of a certificate issued to the heirs of Ebenezer Pulsifer, who died some time in the fifties.  His heirs were Lucy E. Granger, his sister, and Joseph P. Pulsifer, his brother, who died in the sixties leaving Lucy E. Granger, his heir also. Lucy E. Granger and her husband, Geo. T. Granger, are the common source of title of the parties to this cause.

The plaintiff holds under general warranty deed, executed and delivered to him in August, 1903, by all the heirs of Lucy E. Granger and Geo. T. Granger.

The defendant holds under a warranty deed, executed and delivered to him on April 14, 1874, and duly filed for record July 28, 1874, and recorded in deed records of Hardin County, Texas, volume F, page 324 on the 19th day of August, 1874, executed by Geo. T. Granger and Lucy E. Granger, acting by and through their agent and attorney in fact, T. J. Russell.  It was proven also that there had originally existed a contract in writing between Lucy E. Granger and Joseph Pulsifer, as sole heir of Ebenezer Pulsifer with A. H. Reading, but that said contract after diligent search had been lost, but its terms were shown to have been substantially that upon A. H. Reading locating said land

and paying the expenses for locating the same, that he should have a locative interest equal to 1-3 of said land, that said locative interest so earned or to be earned by A. H. Reading was owned, at the time of the conveyance by T. J. Russell to G. W. O'Brien, by the said G. W. O'Brien and R. H. Smith jointly and in the proportion in acreage as was conveyed to them respectively by said T. J. Russell as agent and attorney, to said G. W. O'Brien and R. H. Smith.

On the 23d day of January, 1871, Geo. T. Granger and his wife, Lucy E. Granger, who then resided in Galveston, Texas, executed and forwarded to Tom J. Russell, who then resided in Beaumont, Jefferson County, Texas, the following instrument:

"The State of Texas, }
County of Galveston. }

"Know all men by these presents: that we, Geo. T. Granger and Lucy E. Granger, of said county of Galveston, do hereby and herein appoint, constitute and confirm Tom J. Russell, attorney at law of the county of Jefferson, State aforesaid, our agent and attorney in fact for us and in our names to bargain, sell and convey, lease, rent and confirm to any person or persons, and for any sum of money or other consideration, as to him may seem most to our advantage, all tracts or parcels of land lying and being situated in the county of Hardin, State of Texas, and to all lots, blocks or parts thereof of land lying and situated in the town of Beaumont, county of Jefferson, State aforesaid; to receive the consideration for which the sale of said tracts or parcels of land or town lots may be made, and for the same to execute in our name proper receipts and acquitances, and to make and execute to the purchaser or purchasers good and valid deeds and titles to such tracts or parcels of land or town lots, which such covenants and warrants as to our said agent or attorney may seem proper, whose acts in the premises we hereby ratify.

"Witness our hands and scroll seals this 23d day of January, 1871.

George T. Granger, (Seal).<br>Lucy E. Granger, (Seal)."

The said power of attorney was duly and legally acknowledged by Geo. T. Granger and Lucy E. Granger on the day of its execution, before Edward T. Austin, notary public, Galveston County, Texas, and was duly filed for record by clerk of Hardin County, Texas, July 28, 1874, and recorded in Hardin County, Texas, on the 19th day of August, 1874, in volume "A" records of said county, pages 76 and 77. The lands mentioned in the foregoing power of attorney were the separate estate of Lucy E. Granger by inheritance, as sole heir of Ebenezer and Joseph Pulsifer.

It was shown that Geo. T. Granger owned no individual estate whatsoever in either Hardin or Jefferson County, nor did he and Lucy E. Granger ever own any community estate located in said counties. The power of attorney above set forth was sent from Galveston to Beaumont by Geo. Granger, to the said attorney, T. J. Russell, and the said Geo. Granger, who was a son of Geo. T. Granger and Lucy E. Granger, conducted all the correspondence both before and subsequent to the execu-

tion of the power of attorney by his father and mother to T. J. Russell, and according to the testimony of his sister generally acted for his father and mother in the transaction of such business as any other son would do. Among the letters received by T. J. Russell from Geo. Granger in behalf of his father and mother, one dated August 16, 1872, contained the following statement, to wit: "The survey of land in Hardin County was for the heirs of Ebenezer Pulsifer, deceased, mother and uncle were the heirs on certificate obtained by the late Judge Junker when in the Legislature in 1854 or 1855 and was then given to A. H. Reading to lay or locate, pay all expenses, obtain patent and receive 1-3 for his pay, receiving deed for the 1-3 from mother and uncle, the whole certificate was for 1-3 of a league."

It was further shown that contemporaneous with the execution of the deed by Geo. T. Granger and Lucy E. Granger to G. W. O'Brien for the 160 1-3 acres of land in controversy, that a deed was executed to R. H. Smith for a tract of land, the acreage of which if added to that conveyed to G. W. O'Brien made an acreage equal to the 1-3 locative interest.

It was further shown that R. H. Smith and G. W. O'Brien were the owners and entitled to whatever locative interest A. H. Reading may have owned by reason of locating the 1-3 of a league known as the Ebenezer Pulsifer 1-3 league in Hardin County, out of which the land involved in this suit is taken.

It was further shown that G. W. O'Brien· obtained the patent on March 9, 1874, for the entire 1-3 league patented to Ebenezer Pulsifer from the General Land Office and paid the patent fees due.

It was further shown that all the instruments, that is to say, the patent, the conveyance to Geo. W. O'Brien and the conveyance to R. H. Smith, were filed for record on the same day and at the same hour.

It was further shown that subsequent to the conveyance to the defendant, G. W. O'Brien and to R. H. Smith, that the said Lucy E. Granger and Geo. T. Granger never rendered for taxes nor paid taxes on the 500 acres so conveyed respectively to G. W. O'Brien and the defendant in this case, and to R. H. Smith.

It was further shown that on the 23d day of January, A. D. 1889, the said heirs of Lucy E. Granger made, constituted and appointed Henry C. Mayer their agent and attorney to clear the title to the Pulsifer land and to convey the same; and it was proven by Henry C. Mayer that at the time he was appointed attorney that he was told by A. Wakelee, a husband of one of the heirs and who employed him as attorney for the balance, that the heirs had conveyed the locative interest of 500 acres to G. W. O'Brien and R. H. Smith, and that his employment was not in reference to that which had been conveyed to O'Brien and Smith.

It was further shown that T. J. Russell, the attorney who conveyed the land for Lucy E. Granger and Geo. T. Granger to Geo. W. O'Brien, never knew or corresponded directly with them, but had all of his correspondence with their son, Geo. Granger, and in corresponding with them about the land would write to Geo. Granger explaining the transaction, about the date of same and about the transaction he had had and the conveyance he had made to Geo. W. O'Brien and R. H. Smith for the locative interest and does not remember whether he received a reply from

Geo. Granger approving the same or not, but knows that up to the filing of this suit he never heard his action questioned or repudiated by either Geo. T. Granger or Lucy E. Granger or the heirs of said Geo. T. and Lucy E. Granger.

On April 14, 1874, said T. J. Russell, as agent and attorney of Geo. T. and Lucy E. Granger, and in their name and acting under the power of attorney given him by them on January 23, 1871, executed a general warranty deed, reciting the consideration of $160 and conveying 160 1-3 acres as described by metes and bounds in plaintiff's petition, of the E. Pulsifer 1-3 league to said defendant G. W. O'Brien, which said deed was on the 28th day of July, A. D. 1874, filed for record and thereafter duly recorded in deed records of Hardin County, Texas, volume F, page 324, that all of said conveyances antedate and were of record long anterior to the conveyance made by the heirs of Geo. T. and Lucy E. Granger to the plaintiff herein; that although said deed recited a cash consideration of $160, yet it was shown that the consideration of said deed, together with the contemporaneous deed of like nature and character, executed by said Russell to R. H. Smith was in consideration of the locative interest so earned by A. H. Reading and which was, at the time of said conveyance, made by said Russell as agent and attorney, to R. H. Smith and G. W. O'Brien, owned by R. H. Smith and G. W. O'Brien and in the proportion as the acreage in said two deeds bears to each other. Geo. T. Granger died on the 1st day of January, 1874, and had therefore been dead three and one-half months when on April 14, 1874, the deed in the name of himself and wife was executed and delivered by Tom J. Russell, their agent in said power of attorney, to defendant Geo. W. O'Brien conveying the land in controversy.

It was further shown that at the time said conveyance was made by T. J. Russell to said G. W. O'Brien and R. H. Smith that the said T. J. Russell, the attorney, and the said G. W. O'Brien neither knew that the said Geo. T. Granger was dead, nor did they learn of his death until many years after. Lucy E. Granger died in 1876 and Geo. Granger, son of Lucy E. Granger and George T. Granger, died a few years later. An outstanding title against plaintiff to one-half interest in said land in Henry C. Mayer was shown by defendant on the trial.

The following issues of law were involved in this case:

1. Did the death of George T. Granger, who, with his wife, Lucy E. Granger, were principals in the power of attorney appointing Tom J. Russell agent to sell the wife's separate property, revoke the authority of said agent to act under said power of attorney? And was the conveyance of the property in controversy to defendant by said agent Tom J. Russell, acting under said power of attorney after the death of one of his principals, void?

2. If said conveyance was not void, but only voidable, was there a sufficient ratification to make it binding on Lucy E. Granger or her heirs?

3. Did said power of attorney, by its terms, authorize Tom J. Russell to convey said land to defendant in consideration of a locative interest which said Russell believed to exist and to be owned by defendant G. W. O'Brien?"

It is the settled rule in Texas that a married woman may dispose of

her separate estate or homestead, through a power of attorney in which she is joined by her husband. (Patton v. King, 26 Texas, 685; Warren v. Jones, 69 Texas, 462; Jones v. Robbins, 74 Texas, 615; Cannon v. Bontwell, 53 Texas, 626.) The power of attorney, being executed and acknowledged as required by law by Mrs. Lucy E. Granger and her husband, was therefore a valid instrument. The property was her separate estate and, as said in Patton v. King: "In regard to her separate property, a married woman is generally treated as a *feme sole.* The acknowledgment by the statute is for her protection; and when that is made to the power of attorney, the object of the statute has been as effectually attained as if made to her deed of conveyance." The power of attorney was vitalized by the signature and acknowledgment of the husband and his death did not have the effect of withdrawing the vitality given to it. If Mrs. Granger had died, of course the power of attorney would at once have become null and void, but the husband owned no interest in the land and his death could not affect the force and effect of the power of attorney given by his wife. We conclude that the death of the husband did not revoke the power of attorney executed by the husband and wife, which authorized the sale of the separate estate of the wife.

We do not think there was any evidence of ratification of Russell's act in making the deed to O'Brien on the part of Mrs. Lucy E. Granger or her heirs. If the son of Mrs. Granger was informed of the execution of the deed, it was at a time when he could not ratify the deed because his mother was then living and she alone had the power of ratification. The burden of proving ratification rested on the party asserting it, and while assent may be presumed, in some cases, yet there can be no ratification without full knowledge of the facts. A letter may have been written by Russell to George Granger, but there is nothing to indicate that he received it. He did not reply to any such letter. (Reese v. Medlock, 27 Texas, 120.)

It is the general rule that where an agent makes a deed to land of his principal without authority to do so, a ratification of his act must be by deed of the principal. Mere assent, or such acquiescence as would show assent, is not a ratification. (Zimpleman v. Keating, 72 Texas, 318; Etheridge v. Price, 73 Texas, 597.) If this case could be held to be an exception to the general rule and ratification may be shown by assent and other circumstances, the proof has not been supplied. As said in Meyer v. Smith (Texas Civ. App.), 21 S. W. Rep., 997: "Mere delay in repudiating will not, in our opinion, have the effect of ratifying."

It is so well settled as to be elementary, that such instruments as powers of attorney must be strictly construed, and that under no circumstances will the principal be bound beyond the plain import of the language of the instrument. (Gouldy v. Metcalf, 75 Texas, 455; Frost v. Erath Cattle Co., 81 Texas, 505.) In accordance with this rule it is settled that a power to convey lands does not authorize a conveyance in exchange or partition of lands; that a power to sell does not authorize the agent to barter for other property, and that a power to sell and convey does not include the power to convey in discharge of a debt or a claim.

In the Frost case, above cited, the power of attorney authorized the agent, among other things, "to make contracts for the sale of any and all tracts of land" owned by the principal in Texas, "to execute full and sufficient deeds of conveyance" to any person to whom he sold and generally to manage the business of the principal. The agent, by virtue of the power of attorney executed to a third person a deed to certain land in settlement of claims set up by that person to lands belonging to the principal. The court said: "It sufficiently appears from the recital in the deed that the transaction therein referred to was the settlement of some interest held or claimed by Mrs. Rebecca De Cordova in the lands of Richard B. Kimball, or the proceeds of them. The transaction was plainly not a sale. 'A sale is defined to be an agreement by which one of two contracting parties, called the seller, gives the thing and passes the title to it for a certain price in current money.' . . . 'It differs from accord and satisfaction, because in that contract the thing is given for the purpose of quieting a claim and not for a price.' . . . The deed in question excludes and negatives the idea of price or money paid. Under the terms of the power of attorney, was Richard Kimball, the agent, authorized to execute deeds in discharge or adjustment of adverse claims preferred by Rebecca De Cordova against Richard B. Kimball?" The court answered the question in the negative. The same ruling has been made in other cases. (Smith v. Powell, 5 Texas Civ. App., 380; Folts v. Ferguson, 24 S. W. Rep., 657; Kent v. Cecil, 25 S. W. Rep., 715; Morton v. Morris, 66 S. W. Rep., 94.) The opinion in the last case was rendered by this court, through Associate Justice Neill, and the subject is thoroughly discussed.

In this case the agent was authorized "to bargain, sell and convey, lease, rent and confirm to any person or persons, and for any sum of money or other consideration, as to him may seem most to our advantage, all tracts or parcels of land lying and being situated in the county of Hardin, . . . to receive the consideration for which the sale of said tracts or parcels of lands or town lots may be made, and for the same to execute in our name proper receipts and acquittances, and to make and execute to the purchaser or purchasers good and valid deeds and titles, etc." There is no authority granted in the instrument to make deeds in settlement of claims of parties to the land of the principals, but the language clearly points to but one conclusion and that is, that the principals contemplated and intended to confer no power except that of a sale and the collection of the purchase money.

The judgment is reversed and here rendered in favor of appellant.

*Reversed and rendered.*