## ELIZABETH G. GEHR *v.* ROBERT W. BRECKONS.

EXCEPTIONS FROM CIRCUIT COURT, THIRD CIRCUIT.

SUBMITTED JUNE 9, 1913.          DECIDED JUNE 16, 1913.

ROBERTSON; C.J., PERRY AND DE BOLT, JJ.

PRINCIPAL AND AGENT—*implied authority—revenue stamps.*

An agent instructed to collect a sum named as the purchase price of certain leases, which the principal had agreed to transfer to the purchaser by a "good and sufficient deed of assignment," and to deliver the assignment, has implied authority to permit the purchaser to retain out of the agreed consideration the amount of the cost of the revenue stamps required by law to be affixed to the instrument.

Gehr v. Breckons, 21 Haw. 602.

ID.—*ratification of authorized act of agent.*

A principal must disavow the unauthorized act of his agent within a reasonable time after the fact has come to his knowledge or he will be deemed to have ratified it.

ID.—*burden of proof—presumption as to silence.*

The burden of proving a ratification of the unauthorized act of an agent is upon the party relying upon it. There is no presumption, either of law or of fact, that a principal was silent when it was his duty to speak or that circumstances existed upon which a claim of ratification may be based.

ID.—*breach of duty—burden of proving damage.*

In an action on the case for breach of duty by an agent by paying, contrary to his instructions. claims presented against the principal, the burden is upon the plaintiff to prove the extent of his damage by showing that the claims were unfounded either in whole or in part or that facts existed which would have reasonably enabled plaintiff to make a favorable compromise of the claims.

COVENANTS—*collection of rents—breach.*

The collection of rents payable in advance under the terms of the leases, at the times prescribed in the leases and prior to the assignment, is not a breach of a covenant, in an assignment of the leases, that "no rents reserved * * * have been collected * * * except such rents as are now due and payable pursuant to the terms of the leases."

## OPINION OF THE COURT BY PERRY, J.

This is an action on the case. The main allegations of the declaration are that defendant, an attorney at law, was employed by plaintiff (a) to receive on her behalf the sum of $5500 which one Davies had agreed to pay her for an assignment of certain leases and rents, (b) to deliver to Davies the instrument of assignment, (c) out of the money collected to pay the Hilo Mercantile Company not exceeding $60 and to retain as compensation for his services the sum of $250 and (d) to forward the balance of $5190 to plaintiff at Seattle in the State of Washington; that defendant, disregarding his duty to his client and "contriving and intending to injure, aggrieve, harass and oppress plaintiff" did not use due en-

deavors to procure the sum of $5500 from Davies but accepted $5256 in place of $5500 and delivered the assignment; that defendant paid the Hilo Mercantile Company $315.49 in excess of the authorized amount of $60 and without authority paid to one Dr. Cooper the sum of $77 and for stamps on the writ of assignment the sum of $24; and that by reason of the "malfeasance of said defendant and his failure to properly observe his retainer and employment, plaintiff has been damaged in the sum of $677.91." At the trial the defendant offered no evidence. Aside from the testimony of plaintiff's attorney by way of identification of one of the letters about to be referred to, the only evidence introduced on the plaintiff's behalf consisted of the following five documents: An instrument dated December 9, 1907, whereby plaintiff agreed to assign to Davies, and the latter agreed to purchase from plaintiff, certain leases and rents for the sum of $8000, $2500 of which was to be paid on execution of the instrument and the balance of $5500 on December 20, 1907; a copy of a letter from plaintiff to defendant, dated December 11, 1907; an acknowledgment by defendant, dated December 9, 1907, of the receipt of $250 "on a/c of legal services, leaving balance due me * * * of the sum of $250"; and two letters from defendant to plaintiff, one dated December 20, 1907, and the other February 7, 1908.

Plaintiff's letter to defendant read as follows: "Referring to the settlement made between me and T. Clive Davies concerning the Waiakea Mill Co. matter, in which you acted as my attorney, and under the terms of which settlement there is due me on the 20th day of December, 1907, the sum of $5500.00, to be paid by Mr. Davies, I beg leave to advise you that I will not be in Honolulu at that time. I therefore authorize you to collect the money from Mr. Davies, retaining the balance of your fee,—that is, $250.00—and the balance thereof, being $5250.00 less the sum of somewhere between $50.00 and

$60.00, which must be paid, under circumstances with which you are acquainted, to the Hilo Mercantile Company,—transmit to me through the medium of United States Money Orders at Seattle, State of Washington. In the meantime I deliver to you the deed necessary to perfect the settlement, which you are authorized to deliver when the $5500.00 is paid and you are satisfied that the case of Hilo Mercantile Company -vs- myself, pending at Hilo, has been discontinued, and the two cases of the Waiakea Mill Co.,—one against myself and one against Mr. Charlock, have likewise been discontinued."

Defendant's letters were as follows: "Today being the 20th. of December, the time fixed for the consummation of the agreement between you and Mr. Davies, I waited upon Mr. Holmes, but experienced some trouble. It was claimed by Mr. Davies that many of the rentals due under the leases had been paid in advance; that such payments in advance had not been in contemplation of yourself and him at the time the agreement was entered into; and that if we insisted upon the terms being literally complied with, they on their part would insist that the rent due from the Hilo Railway Company at the end of this year, should be taken by them. I saw some merit in their contention, and finally entered into an agreement with them that all rent should be figured as of January first, 1908, —they to pay us the Hilo Ry Co. rent, and we to give them allowance for such rent as had been paid in advance. The figures are now being made up, and I will write you on that matter by the next mail. Wishing to close up the matter immediately, however, (as I did not know what might happen in the meantime) I delivered the deed and took their check for $5176.00, that representing the $24.00 stamps due on the deed, and the $300.00 difference on the Railway Company deal. As near as I can tell from a brief glance over the figures, we will probably have about $150.00 more coming, or somewhere in that neighborhood anyway. I beg leave to hand you herewith forty (40) Money Orders, each in the sum of $100.00, making in all the sum of $4000.00, leaving in my hands the sum of $1160.00. I have not figured out just where I come out at, but by Monday will get the entire thing straightened

out, and forward whatever is due by the next mail.   Out of
this $1160.00 I will have to straighten out the Hilo Mercan-
tile Company claim, and my own fee.   There is also a claim
sent to me by Dr. Cooper for the sum of $77.00, which he says
you told him to come to me and collect.   You will understand
that I am paying no claims against you without your direct
authority.   Indeed, I am getting rid of the $4000.00, so that
if anybody else asks me I can say that I do not owe you any-
thing.    I know that my action on the rent matter will meet
with your approval, since the deal was only fair and equitable,
and that I know is what you wish to do:"

"I beg leave to hand you herewith money order for the
sum of $539.96, settling accounts between us in full.

"They are made up as follows:—

| | | |
|---|---:|---:|
| Amount received from Davies & Co., December 20, 1907 | | $5176.00 |
| Amount received from Davies & Co., December 23, 1907 | | 80.00 |
| Total | | $5256.00 |
| Amount paid Hilo Mer. Co. (as per letter, a copy of which is herewith enclosed) | $ 375.49 | |
| Amount paid for Money Orders | 12.00 | |
| Amount forwarded to you Dec. 20, 1907 | 4000.00 | |
| Amount of fee | 250.00 | |
| Amount retained for Dr. Cooper | 77.00 | |
| Amount paid for Money Orders enclosed | 1.55 | $4716.04 |
| Balance herewith enclosed | | $ 539.96 |

I beg leave to hand you herewith statement of Davies & Co.
relative to rents.   If this be not correct, let me know and I will
take it up with them."

Attached to defendant's letter of February 7, 1908, was a
memorandum of the items making up the total of $375.49 paid
to the Hilo Mercantile Company; and also the statement re-
ferred to in the letter showing amounts "over-collected" and
other amounts "under-collected" by plaintiff under the subleases
mentioned in the agreement of December 9, 1907.

While the evidence was meager, the plaintiff made a prima facie showing that defendant disregarded her instructions contained in the letter of employment, both by accepting from Davies less than $5500 and by paying the $77 to Dr. Cooper and the excess of $315.49 to the Hilo Mercantile Company. The payment of the $24 for stamps was within the authority by implication conferred on defendant by his principal. By the terms of the contract of December 9, 1907, plaintiff was required, in order to become entitled to the $5500, to deliver to Davies a "good and sufficient deed of assignment" of the property described. Compliance with that agreement necessarily involved payment by plaintiff of the stamp duty. *Tomikawa.* v. *Gama,* 14 Haw. 431. In purchasing the stamps, defendant merely performed plaintiff's undertaking,—a prerequisite to the securing of the money which he was authorized and directed to collect.

On behalf of defendant it is contended that his unauthorized acts must be deemed to have been ratified by plaintiff, since the evidence does not disclose that during the period intervening between the receipt by her of defendant's letter of February 7, 1908, and the commencement of this action on March 21, 1912, plaintiff wrote to defendant or disaffirmed his acts. It is undoubtedly the law that a principal must disavow the unauthorized act of his agent within a reasonable time after the fact has come to his knowledge or he will be deemed to have ratified it. *Clews* v. *Jamieson,* 182 U. S. 461, 483; *Rolling Mill* v. *Railroad,* 120 U. S. 256, 259; *Feild* v. *Farrington,* 77 U. S. 141, 148; *Gold-Mining Co.* v. *National Bank,* 96 U. S. 640, 644. If during the period mentioned the plaintiff did not reply to defendant's letters reporting his transactions as her agent, her silence would justify and perhaps require a finding of a ratification by her of his acts. But there is no presumption, either of law or of fact, that she was silent and no evidence was adduced tending to show that she was. The burden of proving

a ratification in such a case is upon the party relying upon it. 31 Cyc. 1647; *Moore* v. *Ensley*, 20 So. (Ala.) 744, 749; *Combs* v.*Scott,* 12 Allen 493, 497; *Skirvin* v. *O'Brien,* 43 Tex. Civ. App. 1, 6. In view of the entire absence of evidence on the subject, this defense cannot now prevail.

No damage was shown to have been sustained by the plaintiff in consequence of the payments to Dr. Cooper and to the Hilo Mercantile Company. There was no evidence whatever tending to show that the amounts were not due and payable by plaintiff to the two claimants named, or that facts existed which would have reasonably enabled plaintiff to make a favorable compromise of the claims.

As to the remaining item of $224 the only evidence is that to be found in defendant's letters and the memorandum attached to one of them and said by defendant to have been prepared on behalf of Davies. The memorandum contains a schedule of thirty-two leases, with the rental from each, all payable in advance, the dates when the rents were payable, to what date the rent under each lease was paid and the amounts under each claimed to be "over-collected" (a total of $223.95) and those "under-collected" (a total of $304.15). It is apparent upon the face of the statement that each of the amounts so claimed to have been "over-collected" was for a period, either annual or semi-annual, commencing in advance on a day prior to December 9, 1907, the date of the agreement to assign. None of these sums were collected prior to the times stipulated therefor in the leases. The agreement of December 9, 1907, contemplated the assignment of "the rents reserved by the said sub-leases and tenancies" (presumably the leases enumerated in the defendant's memorandum), but further provided that in the deed of assignment plaintiff should covenant "that no rents reserved by or under any sub-lease or sub-tenancy * * * have been collected by or on her behalf, except such rents as are now due and payable pursuant to the terms of the said sub-

leases and tenancies." Upon the showing of defendant's own letter the rents charged to plaintiff in the settlement by Davies with defendant had not been "over-collected" and should have been credited to plaintiff.

As to the so-called "under-collected" rents no ruling is necessary at this time. If under the terms of the assignment they were the property of plaintiff, she was entitled to them in addition to the $5500. If, on the other hand, the title to them passed to Davies, they remained uncollected by plaintiff and Davies was at liberty to collect them at any time and his obligation to pay plaintiff $5500 was unaffected thereby.

The judgment below was for one dollar only, on the theory that no damage had been proven. The total collected by defendant from Davies was $5280, including $24 used for stamps. Since upon the only evidence in the case the plaintiff was entitled to recover at least the balance of $220, the exceptions are sustained and a new trial is granted.

*Eugene Murphy* and *C. H. McBride* for plaintiff.

*A. S. Humphreys* for defendant.