G. H. WATKINS, APPELLEE, v. MICHAEL H. HAGERTY ET AL., APPELLANTS.

FILED APRIL 17, 1920. No. 20926.

1. **Principal and Agent: POWER OF ATTORNEY: CONSTRUCTION.** A power of attorney will be construed with respect to the natural import of the language used, keeping in view the purpose and intent of the grantor.

2. ——: ——: REVOCATION. Where a power of attorney was executed by husband and wife with reference to real estate owned

by the husband, in which the wife had no interest save and except by virtue of the marital relation, her death will not revoke the power of attorney.

3. ——: ——: INCOMPETENCY OF GRANTOR. Parties dealing in good faith with an agent acting under a power of attorney which is apparently regular and in full force will not be defeated in their rights by a subsequent adjudication that the grantor of the power is mentally incompetent.

APPEAL from the district court for Morrill county: RALPH W. HOBART, JUDGE. *Affirmed.*

*Halligan, Beatty & Halligan,* for appellants.

*Hainer, Craft & Lane, C. D. Ritchie* and *F. E. Williams, contra.*

ALDRICH, J.

This action in equity was commenced in the district court for Morrill county, Nebraska, by G. H. Watkins, to foreclose a certain mortgage executed by John D. Hagerty, as attorney in fact for John Hagerty, for the sum of $8,000, dated April 28, 1916. John Hagerty, Charles J. Bills, Andrew D. Seybolt, L. A. Engelhaupt and Michael H. Hagerty were defendants. While this case was pending John Hagerty died, the case was revived in the name of the administrator, Michael H. Hagerty, and in the name of the heirs of the estate. The defendants Charles J. Bills and Andrew D. Seybolt filed disclaimers and the action has been dismissed as to them. Anna H. Weir filed a petition of intervention seeking the foreclosure of a mortgage executed by John D. Hagerty to Charles J. Bills on April 1, 1909, in the principal sum of $3,000, which mortgage was later assigned to the intervener, Anna H. Weir. The defendant L. A. Engelhaupt filed a cross-petition to foreclose a mortgage also executed by John D. Hagerty, as attorney in fact of John Hagerty, to Andrew D. Seybolt in the principal sum of $3,500. This was executed September 11, 1912, and afterwards duly assigned to the cross-petitioner, L. A. Engelhaupt. The answer to plaintiff's petition, also

to petition of intervener, and the answer to pleadings filed by cross-petitioner, set up as defense that John D. Hagerty, attorney in fact for John Hagerty, did not have authority to execute the mortgages being foreclosed by plaintiff and cross-petitioner, for the reason that power of attorney executed by John Hagerty to John D. Hagerty was exhausted and *functus officio* from and after April 2, 1909, at which time John D. Hagerty had procured a loan under the power of attorney from one Charles J. Bills; that this power of attorney did not authorize John D. Hagerty to execute more than one mortgage upon the land therein described; set up the further defense that this power of attorney was a joint power executed by John Hagerty and Ann Hagerty, his wife; that the death of Ann Hagerty on July 18, 1910, revoked the power of attorney. Further defense is made that John Hagerty had become *non compos mentis* in May, 1910; and being in this condition the power of attorney was revoked by operation of law.

Power of attorney executed by John Hagerty and his wife, Ann Hagerty, is as follows: "Power of Attorney. Know all men by these presents, that we, the undersigned, John Hagerty and Ann Hagerty, husband and wife, both of the city of Denver, state of Colorado, have this day made, constituted and appointed by these presents to make, constitute and appoint John D. Hagerty, also of the city of Denver, state of Colorado, our true and lawful attorney for us and in our names, place and stead to borrow whatever sum of money he may deem proper from any person willing to advance the same, and for him, our said attorney, to give as security for the payment thereof our ranch known as the north half of the southeast quarter and lots numbered six (6) and eight (8) of section one (1) in township nineteen (19) north of range fifty (50) west; and the south half of the northeast quarter and the south half of the northwest quarter of section one (1), township nineteen (19) north of range fifty (50) west, and the government lots num-

bered one (1), two (2), three (3) and four (4), of section one (1), township nineteen (19) north of range fifty (50) west, and the northeast quarter of section twenty-two (22), in township twenty (20) north of range forty-nine (49) west, all said premises being situated in the state of Nebraska; hereby authorizing said attorney in fact to sign our names to whatever papers that may be necessary; to sign, execute and deliver any mortgage and note or notes that may be required and to deliver the same to the party advancing the money therefor and to collect and receive the money; herewith giving and granting unto the said John D. Hagerty, our attorney in fact, full power to do and perform all and every act and thing whatsoever requisite and necessary to be done in and about the premises, as fully to all intents and purposes as we might or could do if personally present, hereby ratifying and confirming all that said attorney shall lawfully do or cause to be done by virtue hereof.

"In witness thereof we have hereunto set our hands and seals this the 15th day of March, A. D. 1909.

        "John Hagerty. Ann her x mark Hagerty."

The district court decreed foreclosure of the mortgages, and the case is brought to this court on appeal.

The issues presented by the briefs may be summarized in these propositions: First, did the power of attorney itself by its express terms authorize John D. Hagerty as attorney in fact to execute but one loan? second, the power of attorney having been executed by John Hagerty and wife, Ann Hagerty, did the death of the wife soon after the execution of the first mortgage revoke the power of attorney? third, did the fact that John Hagerty was *non compos mentis* from and after May 1, 1910, revoke said power of attorney?

Section 6195, Rev. St. 1913, provides: "In the construction of every instrument creating or conveying, or authorizing or requiring the creation or conveyance of any real estate, or interest therein, it shall be the duty

of the courts ·of justice to carry into effect the true interest of the parties, so far as such intent can be collected from the whole instrument, and so far as such intent is consistent with the rules of law.''

One of the purposes the principal had in granting this power of attorney to his son was to borrow money to improve and carry on the ranch herein described. He was authorized to do everything necessary to be done in and about the above-mentioned premises, as fully to all intents and purposes as he himself might or could do when in health.

The principal also authorized his agent to sign and execute any mortgage necessary to secure payment of any note or notes that may be required by the party advancing money therefor. Then it is plain that the principals intended to secure by mortgage or mortgages whatever money was borrowed on a note or notes. It is proper to say that, since a mortgage is simply collateral security to a note, when the principal authorized the agent to sign and execute a note or notes that may be required by the party advancing the money, he also intended him, if necessary, to execute a mortgage or mortgages as security for each note signed and delivered.

In an instrument of the character of the one in question it is incumbent upon us to constantly keep in view the nature and purpose of the instrument to be construed, and also the grantor's intention. The grantors intended to extend authority to execute as many notes as were necessary to get sufficient money, and that power carries with it the authority to execute as many mortgages as were necessary to secure any note or notes executed and delivered. There was granted also to this agent by the principal plenary power to effect this disposition; then, the power given to an agent conveys as much interest as may be necessary to secure the money, and to give a note or notes and further a mortgage or mortgages which secure the note or notes. This carries

out the expressed intent of the principal as manifest in the power of attorney. There is in this power of attorney absolute authority granted to dispose of this property by mortgage or mortgages. The principal intended the agent should borrow as much money from whomsoever he could get it as he needed to carry on the ranch, and also to secure payment of the note or notes by giving as security therefor a mortgage on the ranch. This the agent did, and he executed the intent for which the authority was granted him. 31 Cyc. 1058. The intention of the principal is to be gathered from the whole instrument. It may be deemed by some that the authority granted was ambiguous. If so, following the rule laid down by the court in *Osborne & Co. v. Ringland*, 122 Ia. 329, we say that, where a written appointment as agent admits of two constructions relative to the authority conferred, it should be construed most favorably to a third person dealing with the agent. As a matter of law we hold that, in a power of attorney issue between a third person and the principal as to the agent's authority as evidenced by a written instrument, the principal is bound by the apparent interpretation which he himself has put upon the appointment. It is a matter of record that he conveyed to the agent every authority to do the things which he himself would approve of, were he present.

In construing the instrument in question we should keep within view the intention of the grantor. The mortgages foreclosed herein are valid and subsisting liens. Under the power given, the agent was not limited to one mortgage.

Another issue presented for consideration is: Would the death of Ann Hagerty, wife of John Hagerty, revoke the power of attorney? We hold that the death of the wife would not revoke the power of attorney because Ann Hagerty had no title or interest in and to the property save and except the interest that a wife has in her husband's property. It is stipulated that none of the

property mortgaged was used as a homestead. Then, the only interest possessed by Ann Hagerty was contingent, remote and depended upon the happening of a certain event in the future before her interest from the nature of things would attach. And as she died before her husband, her contingent interest passed with her. The power of attorney, so far as its continuation was concerned, could have no possible relation, and it would continue in the same way as it would have continued if her husband had died and she had owned the real estate. The death of her husband does not revoke the power of attorney given with reference to her separate estate. *Skirvin v. O'Brien*, 43 Tex. Civ. App. 1. The wife's separate estate is not here for consideration, hence her death prior to that of her husband does not revoke the power of attorney granted by husband and wife. The rule applies with equal force to the husband as well as the wife.

The next question is: Was John Hagerty *non compos mentis* at the time these mortgages were executed, and did the mortgagees know of this mental condition? This issue presents a question of more or less speculation and theory that is not easy to satisfactorily answer. We are convinced that in determining the last issue in this case the son, John D. Hagerty, acted in good faith and within the scope of his authority in administering the power of attorney granted him by his parents in their lifetime. At any rate these brothers and sisters had arrived at the period of manhood and womanhood, were in full possession of their faculties, they knew what their brother, acting under the power of attorney, was doing, and we are satisfied that if he was borrowing money and using it for his benefit and against their interest they would have invoked the aid of the courts in revoking the authority and preventing the possibility of his squandering the estate. They made no complaint, took no steps for their own protection, and allowed innocent

Union P. R. Co. v. Wooster.

parties to loan their brother money in good faith, and they cannot be heard at this time to obtain the benefit of what might be termed a fraud when they could have prevented it. The mortgagees not knowing of the mental condition of John Hagerty, and the power of attorney held by John D. Hagerty being regular on its face and duly recorded and recognized in all its force by all the heirs, they are estopped from denying at this time its validity.

We might discuss the question of the mental incompetency of John Hagerty, and would do so if the record disclosed that the mortgagees acted with full knowledge of his mental condition. We are convinced that they acted in good faith.

Judgment is

AFFIRMED.

LETTON and ROSE, JJ., not sitting.