## Hand v. Calhoun

*Sanders, Hamilton, Dobmeier & Connelly* and *Morris Klewans*, for plaintiffs.

*James S. Burger* and *Henry M. Hipple*, for defendants.

CAMPBELL, P. J., June 5, 1959.—Charles R. Noyes died testate September 21, 1892, seized of a tract of land located in Leidy Township, Clinton County, containing 162 acres and allowances. The second paragraph of his will provided as follows:

"I direct that my estate be settled and divided under and in accordance with the intestate laws of the State of Pennsylvania."

Through the happening of certain events, not here material, an undivided three-fifths interest in the Leidy Township tract became vested in the following persons in the following proportions: Ellen N. Schnars, an undivided one-fifth interest, Virginia N. Hand, an undivided one-fifth interest, William and Robert Lankford, an undivided one-fifth interest, all of whom being heirs at law of Charles R. Noyes. On January 31, 1944, they executed a power of attorney to Martha Noyes, the owner of the remaining undivided two-fifth interest, who was likewise an heir of Charles R. Noyes. By reason of the fact that the court feels the exact

language of this power is important in the determination of this case, the body of the power is quoted herein in full:

"Know All Men By These Presents that we, Ellen N. Schnars, unmarried of Jamestown, New York, Virginia N. Hand, unmarried, of Columbus, Ohio, William H. Lankford and Elizabeth J. Lankford, his wife, of Portland, Oregon, Robert N. Lankford, unmarried of Portland, Oregon, being all heirs at law of C. R. Noyes, deceased, have made, constituted and appointed, and by these presents do make, constitute and appoint Martha Noyes of Westport, Noyes Township, Clinton County, Pennsylvania, our and each of our true and lawful attorney, for us and each of us and in our and each of our names, place and stead, to enter into and take possession of all such lands, tenements, hereditaments and real estate whatsoever to or in which we or each of us are or may be in anyway entitled or interested as heirs at law of C. R. Noyes, late of Noyes Township, Clinton County, Pennsylvania, deceased, to grant, bargain, and sell the same or any part or parcel thereof for such sum or price and on such terms as to her shall seem proper; and for us and each of us and in each of our names, to make, execute, acknowledge and deliver good and sufficient deeds and conveyances for the same, either with or without covenants and warranty; to lease and demise said real estate or any part or parcel thereof for such rents and royalties as she may deem proper; to manage the same; to enter and reenter upon the same, taking possession from time to time as may be advisable to give notices to quit and the like, to collect all rents and royalties due and to become due with power to institute action at law in our and each of our names, and to complete all manner of proceedings at law, distraint or otherwise, which to her shall seem proper and necessary. Giving and granting to our said attorney our and each of our

full authority to act as fully and completely in the premises as we or each of us might do if personally present and generally to do all lawful acts requisite for affecting the premises, hereby ratifying and confirming all that our said attorney shall do therein by virtue of these presents.

"We and each of us hereby specifically ratify and confirm a certain lease heretofore made by Martha Noyes, Attorney in Fact, as Lessor to Joseph P. McMahon, Lessee dated January 3, 1944, with the same force and effect as if the same had been duly executed and acknowledged by us and each of us personally and as fully and completely as we or each of us might have done if personally present."

Ellen N. Schnars, prior to the exercise of this power, died intestate on October 12, 1944, leaving to survive nine children. A new power of attorney dated October 13, 1945, was secured by Martha Noyes from the children of Ellen N. Schnars.

On March 28, 1947, Martha Noyes executed a conveyance, individually and as attorney in fact for the aforementioned heirs, to one Jesse Calhoun. The grantee leased said premises to Godfrey I. Cabot, Inc., which said corporation was successful in the exploration for natural gas.

The basis of plaintiff's claim is that the power of attorney dated January 31, 1944, was revoked by the death of Ellen N. Schnars on October 12, 1944, and that therefore the undivided two-fifth interest of Virginia N. Hand and William and Robert Lankford remained vested in them and not in defendants.

The complaint also raises the question as to whether the power of attorney was broad enough to give the authority to convey the land in question and whether the power could be interpreted to cover after-acquired real estate. However, both of these points were dropped, leaving the sole question to be decided, that

of whether the death of one tenant in common who had signed the power revoked the power as to the remainder of the tenants in common who had likewise signed the power of attorney.

This case would appear to be one of first impression in Pennsylvaina although it is hard to conceive that this problem has not previously arisen. If plaintiffs' contention is true, that the power is revoked as to all by the death of one of the makers, then I have no doubt many real estate titles in Pennsylvania could be successfully attacked.

There would appear to be not the slightest doubt that the grantors and the grantee of the power of attorney dated January 31, 1944, held the land covered by the power as tenants in common. Since 1833, statutes in Pennsylvania have consistently so provided. See Intestate Acts of April 8, 1833, P. L. 315, sec. 14; June 30, 1885, P. L. 251, sec. 1; June 7, 1917, P. L. 429, sec. 19; April 24, 1947, P. L. 80, sec. 4, 20 PS §1.4.

Plaintiffs rely strongly on §123, p. 311, of the A. L. I. Restatement of the Law of Agency 2d, which reads as follows:

"The death or loss of capacity of one of two or more joint principals terminates the authority of an agent to act on their joint account to the same extent as the loss of capacity of a single principal."

The comments under this section indicate that whether or not an agent is authorized to act only on the joint account of two principals depends upon the manifestations of the principals. The comments further indicate affirmatively that an agent who has been authorized by two principals, one of whom dies, continues to be authorized to act for the survivor if the authorization of the survivor so indicates. Our examination of §41 of the A. L. I. Restatement of the Law of Agency 2d indicates that it is inapplicable and certainly not controlling. If the illustrations correctly

indicate the meaning thereof, the question still remains as to whether or not the principals in this case gave authority only jointly to act for their joint account.

The general principles of the law on the question at hand appear to be as follows:

"Where the authority of an agent is derived from joint principals who are jointly interested in its execution, the death of one of the principals generally terminates the agency, even though it is in terms made irrevocable and declared to be binding upon the survivors . . . but a power of attorney which, although conferred by two principals, is clearly issued severally by them, is not revoked by death of one of the principals": 2 C. J. S. Agency, §86, p. 1178.

"The general rule of revocation of the power or authority of an agent on the death of the principal applies to cases where the power or authority is created by two or more principals jointly and one of them dies. In such case, the agency, if not coupled with an interest, is terminated. This rule applies where a power of attorney is created by joint act of a husband and wife; but where, by its terms, the agent is directly authorized to convey certain property of 'any of us' and to 'sign each and all of our names' to any notes, mortgage, or mortgages whatsoever, such an instrument is several, and not joint, and therefore, not revoked by the death of the wife": 2 Am. Jur. Agency, §61, p. 53.

In the case of Chapal's Estate, 45 N. Y. S. 2d 237, 239, it was held that a power of attorney executed by eight persons residing in Paris, France, who had interest in an estate being administered in the Surrogate's Court, created a joint and several power, and hence was not revoked as to the others by the death of one. After reciting the background Judge Howell stated as follows:

"It was obviously necessary that they be represented by an attorney in this country and in this court in proceedings involving the decedent's estate. Apparently each of those eight persons desired Mr. Schulkind to exercise that function. I cannot bring myself to the conclusion that by reason of the fact that all eight executed the instrument appointing him as attorney in fact rather than each executing a separate instrument appointing him as such attorney in fact, it made the power a joint one. To so conclude would impute to those principals an intention that the power should ipso facto be revoked if any one of them should die.

"When the instrument therefore is considered in the light of that background, I reach the conclusion it should be construed as constituting a power which continued valid with respect to the other principals when one of them died."

In the case at bar, one of the grantors of the power of attorney resided in New York State, another in the State of Ohio and the remainder in the State of Oregon. The land was located in Clinton County. It obviously was necessary for the parties to be represented in any negotiation for the sale of their undivided interest in said real estate. Each of the grantors so indicated when they signed the power of attorney. Each one would have been capable of alienating their interest in the property since they held ownership as tenants in common. Words of severalty were placed in the power of attorney and the grantee was authorized.

"For us and each of us and in our and each of our names, place and stead to enter into and take possession of all such lands . . . to grant, bargain and sell the same or any part or parcel thereof . . . and for us and each of us and in each of our names to make, execute, acknowledge and deliver good and sufficient deeds . . ."

Considering this language, certainly this power of attorney would continue valid with respect to the other principals when one of them died.

Since the appellant courts of Pennsylvania have not spoken on this subject, a review of the decisions in foreign jurisdictions may prove helpful.

Where a power of attorney was executed by husband and wife with reference to real estate owned by the husband, in which the wife had no interest save and except by virtue of the marital relation, her death will not revoke the power of attorney: Watkins v. Hagerty, 104 Neb. 414, 177 N. W. 654; Skirvin v. O'Brien, 43 Tex. Civ. App. 1, 95 S. W. 696.

A power of attorney to sell and convey real property, given by a husband and his wife in general terms, without any provision against a sale of the interest of either separately or other circumstances restraining the authority of the attorney in that respect, authorizes a conveyance by the attorney, of the interest of the husband, by a deed executed in his name alone: Ben Holladay v. Daily, 19 Wall. 606 (Colorado).

We quote from the opinion from Mr. Justice Field, on page 611:

"A power of attorney created by two or more persons possessing distinct interests in real property may, of course, be so limited as to prevent a sale of the interest of either separately; but in the absence of qualifying terms, or other circumstances, thus restraining the authority of the attorney, a power to sell and convey real property, given by several parties, in general terms, as in the present case, is a power to sell and convey the interests of each, either jointly with the interests of the others, or by a separate instrument. The cases are numerous where a power given by several has been held invalid as to some of the parties, and yet sufficient to authorize a transfer of the title of the others."

662

The basic question was before the Supreme Court again in the case of Hanrick v. Patrick, 119 U. S. 156, a Texas case, but the court side-stepped the issue and decided the case on other grounds.

The court is favorably impressed with the case of Barton v. Barton, 52 Ind. App. 537, 100 N. E. 870. The facts of this case are almost identical with the facts in the case at bar and it is cited for the proposition that though a power of attorney which is the joint act of a husband and wife is revoked by the death of the wife, it is otherwise where the instrument authorized the conveyance of the property of "any one of us" and the signing of "each and all of our names." The language of the power of attorney construed in that case is strikingly similar to the one signed by plaintiffs in this case. With respect thereto the court stated as follows, on page 539:

"If it could be said that this power of attorney was the joint act of appellant and his wife and was not severable in its character. . . . The parties could not have selected words more appropriate nor of greater force to constitute a several instrument than those used in the writing under consideration. By its terms the agent is directly authorized to convey the property of 'any one of us' and is given no power to convey property held by them jointly, he is by its terms directed to 'sign each and all of our names. . . .' We therefore hold that the instrument under consideration was several and not joint, and therefore it was not revoked by the death of the appellant's wife, Bridget Barton."

Diligent research discloses several other cases which on superficial examination would indicate that they hold to an opposite view to those cases already cited. We believe that these cases are distinguishable on the basis of the facts recited therein.

In the case of Ferguson v. Pilling, 231 Iowa 530, 1 N. W. 2d 662, "A" and "B" each owned an undivided one-half interest in real estate. They gave a power of attorney to "C" to manage the land who in turn leased the land to "D." "D" was sued for rent due. "D" claimed an offset for work done on the premises authorized by agent "C" subsequent to the death of one of the cotenants. The validity of the offset claim depended on whether or not the power of attorney was revoked by the death of one of the cotenants. The court held that the death of one of two or more joint principals terminates the authority of an agent. There was no question in this case concerning the sale of the surviving cotenant's real estate. The management and operation of the real estate was a joint venture of the two cotenants. The court indicated that the record was entirely silent as to any authority whatsoever as to the extent of the agency of "C" after the death of one of his principals. On the basis of the facts involved, we believe this case to be correctly decided but not controlling in the case at bar.

The case of Crawford v. Morris, 228 S. W. 2d 364 (Tex. Civ. App., 1950), has been called to our attention. The facts in this case are quite similar to the facts in the instant case with the possible exception of the actual wording of the power of attorney. It is evident that the court interpreted the power of attorney to be a joint one which would furnish the basis for distinguishing it from this case. We quote one sentence from the opinion of the court, on page 366:

"Where the power is created by two or more principals jointly and not severally, as here, and one dies, the power is thereby terminated."

We have reviewed the case of Weaver v. Richards, 144 Mich. 395, 108 N. W. 382. By a split decision of this court, they held that the death of one of the grantors of a power of attorney prior to the exercise of

the power revoked the power. This case involved a suit by the agent for commissions alleging that he had found a purchaser. The purchaser refused to take title because of the death of one of the principals of the agent. The case involved primarily the question as to whether or not the agency was coupled with an interest and obviously, if it were not coupled with an interest, death of one of the principals would make it impossible for the conveyance of a full fee simple title since the death of one principal would revoke the power as to that principal. In any event, notwithstanding the decision in that case, we feel that the language used by Justice Grant in his dissenting opinion is especially appropriate. We quote as follows:

"The necessity, as well as the wisdom, of placing this estate in the hands of one or more of their number to dispose of and divide the proceeds, is apparent. Under the law, each party could apply for partition to the Courts in each jurisdiction where the land was located. Such proceedings would be expensive and difficult, and probably would not result in the most beneficial sales. . . . The parties, therefore, wisely came together and executed the above agreement. . . . The purpose to be attained is not only not contrary to any policy of the law, but one which the law should specially favor."

In an early Philadelphia case, Wilson v. Stewart, 3 Phila. 51, it was decided that a power to sell lands executed by trustees is not necessarily revoked by one of them. While we do not feel that this case is exactly in point, nevertheless the approach and language of Judge Sharswood is particularly applicable. His approach to the answer came from an examination of the instrument itself. We quote from his opinion as follows, on page 53:

"When we look at the whole scope of the deed of settlement, it appears evident that it was the inten-

tion of the parties, that the attorney thus to be constituted for the sale and management of estates situated at a great distance from the residence of the trustees, should continue the attorney of the trustees for the time being, notwithstanding the death of one or more of them, and there is no principle or rule of law to prevent that intention from being carried into effect."

The appellate courts of this State have found no difficulty in permitting a warrant of attorney to confess judgment to be exercised subsequent to the death of one of the grantors of the power, first on the ground that the intent of the warrant governed, rather than the early English decisions, and finally without regard to the nature of the obligation: Croasdell v. Tallant, 83 Pa. 193; The Kingston National Bank v. Walters, 163 Pa. Superior Ct. 624; Ehnes v. Kissinger, 364 Pa. 334.

As a result of these decisions, we hold that as to whether or not an agent is authorized to act only on the joint account of the principals or for the principals separately depends upon the wording of the instrument, the surrounding circumstances and the manifestations of the principals. Since this matter is before the court on preliminary objections, there is no testimony as to any manifestations of the principals except such as are indicated in the power itself. The surrounding circumstances do not indicate any reason why the power should be revoked as to the surviving principals. No intention can be gathered from the instrument which would indicate that the agent or attorney in fact had authority to act only jointly for all of the principals. On the contrary, the language of the power is clearly severable in nature and authorizes the attorney in fact to act for each or any of the principals. The principals each owned an undivided interest in the real estate in question and each could have alienated his

666

interest therein without acting in unison with the remaining principals. In fact, all of the principals together owned only an undivided three-fifth interest in the property. The agent or attorney in fact was not bound to convey her undivided two-fifth interest to the same grantee to whom she might sell the undivided three-fifth interest of the principals. We therefore hold that the power of attorney dated January 31, 1944, could be exercised both jointly and severally and since it contained language which was several in nature, was not revoked by the death of Ellen Schnars as to the surviving principals.

We therefore enter the following

*Order.*

And now, to wit, June 5, 1959, defendant's preliminary objections are sustained. Costs to be paid by plaintiffs.

And now, to wit, June 5, 1959, an exception is noted and bill sealed for plaintiffs.