**In re Judy Gwen JETER, Debtor.**

**Judy Gwen JETER, Plaintiff,**

v.

**SEMINOLE STATE NATIONAL BANK, Defendant.**

**Bankruptcy No. 583–00145.
Adv. No. 584–5014.**

United States Bankruptcy Court,
N.D. Texas,
Lubbock Division.

Jan. 14, 1985.

James A. Walters, Lubbock, Tex., for plaintiff.

Harvey Morton, Lubbock, Tex., for FDIC.

## MEMORANDUM AND ORDER

BILL H. BRISTER, Bankruptcy Judge.

Judy Gwen Jeter, debtor, challenged the validity of a lien against her homestead claimed by Seminole State National Bank ("Bank"). Federal Deposit Insurance Corporation ("FDIC"), in some capacity, has succeeded to the bank's interest. Among other arguments FDIC contends that certain defenses which might be available to debtor against the bank could not be used against it. The status of the property as homestead on the date of bankruptcy is not an issue and the jurisdiction of this Court to resolve the issues over objection of either party is suspect. However, no party has challenged the jurisdiction of the bankruptcy court to determine these "related to" issues [1] and the mandatory abstention provisions of the Bankruptcy Amendments and Federal Judgeship Act of 1984 were not effective when this adversary proceeding was filed.

On June 29, 1981, Mickey Ray executed a pool construction contract with "Pools West", a swimming pool construction company in Lubbock, Texas, for the construction of a swimming pool on the residential property. The agreement contained the plans and specifications and set out the times during construction when installments on the $20,900.00 contract would be paid by Mickey Ray. Actual costs approximated $24,000.00. The testimony at trial reflects that the hole was completed for the swimming pool and a fiberglass shell was installed, together with some swimming pool equipment, on July 14, 1981. The pool was completed on September 15, 1981. All of the installments were paid by the Rays prior to completion, excepting only $3,561.00 which was paid on October 15, 1981.[2] The record is silent whether the Rays executed a contractual mechanic's lien to "Pools West," but if such contractual lien existed it was not assigned to the bank and is not relevant to this memorandum.

On September 28, 1981, Mickey L. Ray executed a note to the bank in the amount

---

1. "Core proceedings", which a bankruptcy judge may hear and determine, include proceedings for determination of the validity, extent, or priority of liens. 28 U.S.C. § 157(b)(2)(K). Arguably, however, that provision relates to § 541 property of the estate. After property is exempted it is no longer § 541 property of the estate and an argument that challenges to preexisting liens against property which is eligible to be exempted on the date of bankruptcy petition is filed is not within the intended scope of § 157(b)(2)(K) (excepting those liens which are avoidable under § 522(b)) could be persuasive.

2. Apparently there was a dispute between Ray and "Pools West" as to $503.00 which was never paid, but "Pools West" filed no statutory mechanic's lien on that balance.

of $30,000.00 with a notation on the bottom of the note reflecting "money advanced for home repairs and remodel." Three days later on October 1, 1981, both Mickey L. Ray and Judy Ray executed a note in the amount of $30,000.00 to LaDon Realty Inc. indicating that the note was given in part payment for the construction of improvements upon the residential lot. A mechanic's lien contract dated October 1, 1981 (but acknowledged on October 15, 1981) reflected that the purpose of the mechanic's lien was to "complete remodeling of house and complete swimming pool on hereinafter described property." An assignment of the note and lien to Seminole State Bank was dated October 12, 1981, and the mechanic's lien contract, together with the assignment, was recorded in the Office of the County Clerk of Gaines County, Texas, on October 15, 1981.

A divorce decree, after jury trial, was entered on the petition of Judy Gwen Ray one year later on November 29, 1982. The residential homestead was awarded to Judy Gwen Ray in the divorce decree, but Mickey L. Ray was ordered to assume and pay, and hold Judy Ray harmless from, the entire mortgage indebtedness on the property owed to Lamesa Federal Savings and Loan Association on two separate notes with balances approximating $47,995.55 and $20,307.00 respectively. Further, Ray was ordered to pay "the balance due on the short term note secured by the residence herein awarded to petitioner, owed to Seminole State National Bank and being in the approximate amount of $31,728.29." The mandate from the Texas Court of Appeals at El Paso, affirming the decree, issued January 11, 1984.

The debtor challenges the claim by FDIC that its alleged debt of $130,779.68 is secured, in part or in whole, against the residential homestead on four separate bases. An affirmative finding on any of the four contentions advanced by debtor could result in judgment being entered in debtor's favor. However, FDIC has advanced its theory the federal law designed to protect national banks and FDIC prevails over state homestead and other law. For that reason the memorandum will treat each of the four theories advanced by debtor and will consider how the FDIC claim impacts.

First, debtor contends that the mechanic's and materialmen's lien contract dated October 1, 1981, and acknowledged October 15, 1981, by Mickey L. Ray and Judy Ray was void when executed, because the improvements had been commenced before the debtor and her former husband had executed the note and the mechanic's lien. The evidence is undisputed that not only had the improvements been commenced before execution of the note and the mechanic's lien contract, but the swimming pool had been completed and payment for that construction substantially had been made. Under Texas law a written contract on homestead improvements must be executed by both spouses before materials are delivered and labor commenced. V.A.T.S. art. 5460 (in effect when the work was commenced) reads in relevant part:

> "... to fix and secure the lien upon the same [homestead] it shall be necessary for the person or persons who furnish the material or perform the labor, *before such material is furnished or such labor performed,* to make and enter into a contract in writing, setting forth the terms thereof, which shall be signed by the owner and his wife and privily acknowledged by her, as is required in making sale of homestead." (emphasis added)

The statute stems from the constitutional provisions regarding homesteads set forth in Article 16, § 50 of the Texas Constitution. As indicated above the mechanic's lien contract was not executed in this case until October 1, 1981, and was acknowledged fifteen days later on October 15, 1981 ... at least one month after completion of the swimming pool on September 15, 1981. Under Texas law those circumstances mandate that the mechanic's lien contract be deemed ineffective against the homestead. *See Kepley v. Zachry,* 131 Tex. 554, 116 S.W.2d 699 (1938), Supplementary Opinion 121 S.W.2d 595 (Tex.

1938); *Zeller v. University Savings Association,* 580 S.W.2d 658 (Tex.Civ.App.—Houston [14th Dist.] 1979, no writ); *Hicks v. Wallis Lumber Company,* 70 S.W.2d 440 (Tex.Civ.App.—San Antonio 1934, no writ) and *Burton v. Schwartz,* 36 S.W.2d 1066 (Tex.Civ.App.—Fort Worth 1931, writ dismd).

■ The second theory advanced by the debtor is that Mickey L. Ray had executed the September 28, 1981 note without the joinder of Judy Ray and that no lien was created against the homestead when Judy Ray ultimately joined in executing the mechanic's lien contract on October 1, 1981. To preserve the sanctity of the homestead provisions of the Texas Constitution, not only is it necessary that both spouses sign the mechanic's lien contracts for improvements on the homestead but it is required that both spouses confirm and consent to extensions and renewals of mechanic's or materialmen's liens for those improvements. *Uvalde Rock Asphalt Company v. Hightower,* 140 Tex. 200, 166 S.W.2d 681 (1942); *Lewis v. Investors Savings Association,* 411 S.W.2d 794, 797 (Tex.Civ.App.—Fort Worth 1967, no writ); *Sudduth v. Du Bose,* 42 Tex.Civ.App. 226, 93 S.W. 235 (Tex.Civ.App.1906, no writ); and *San Antonio Real Estate Building and Loan Association v. Stewart,* 27 Tex.Civ.App. 299, 65 S.W. 665 (1901, writ ref'd). The note dated September 28, 1981, executed on that date by Mickey Ray without the joinder of Judy Ray, was the note which was attempted to be renewed and extended by the October 1, 1981 transaction. The note and subsequent mechanic's lien contract were ineffective to create a lien against the homestead.

■ The third challenge advanced by the debtor is that the transaction with LaDon Realty was a sham contract and that the bank, as assignee of the so-called mechanic's and materialmen's lien, acquired no rights as a result thereof. The representatives of LaDon Realty testified at the trial that it furnished no materials nor labor and performed no services whatsoever for the debtor and Mickey L. Ray as a result of the mechanic's lien contract. Neither Mickey Ray nor Judy Ray borrowed any monies from LaDon Realty. When LaDon Realty transferred the note to Seminole State National Bank that bank paid nothing to LaDon Realty for the note and liens. The attorney for LaDon Realty also represented the bank. The LaDon Realty representative testified that the attorney told him that "the bank needed it." Thus, it appears that the transaction was designed to accomodate the bank. The attorney drafted the mechanic's lien contract and note, but the representative of LaDon Realty did not know whether those papers were drawn at the request of the bank or at the request of Mickey L. Ray. There was no testimony that any subsequent improvements were placed on the residential property. Reference is again made to V.A.T.S. art. 5460, which requires the person or persons who furnish the material or perform the labor, before the material is furnished or the labor performed, to make and enter into a contract in writing for the lien. In this case LaDon Realty furnished nothing. All of the material and all of the labor were furnished by "Pools West." No lien was acquired by LaDon Realty. *See Burns International Detective Agency v. General Electric Supply Company,* 413 S.W.2d 775 (Tex.Civ.App.—Texarkana 1967, no writ). Before Seminole State National Bank could properly be the assignee of the LaDon Realty note and lien, free of the defenses asserted by the debtor, the bank must have been a holder in due course. *See* Tex.Bus. & Comm.C. § 3.302(a), which defines a holder in due course as one who takes the note for value, in good faith, and without notice of any defenses. The bank transferred no value for the assignment from LaDon Realty. The testimony that the bank's attorney drafted the instruments and told the LaDon Realty representative that "the bank need it" is unchallenged. The simultaneously executed and assigned mechanic's lien contract was for no consideration and constituted a sham contract. The bank acquired no greater rights than those possessed by its assignor, LaDon Realty.

*Stone v. Pitts,* 389 S.W.2d 601 (Tex.Civ. App.—Waco 1965, no writ); and *Carlile v. Harris,* 38 S.W.2d 622 (Tex.Civ.App.—Galveston 1931, no writ).

▉ Finally the debtor contends that the cognizant officers of Seminole State National Bank initially looked solely to Mickey L. Ray for payment of the September 28, 1981 note under which all advances and credits were made and that all renewals and extensions referenced the September 28, 1981 note. She argues that the cognizant bank officers attended the divorce trial and knew that the jury's advisory verdict required Mickey L. Ray alone to pay the alleged lien indebtedness. Thereafter the bank granted further extensions to Mickey L. Ray on two separate occasions and she argues that those facts evidence the intent of the bank to look solely to Mickey L. Ray for payment of the indebtedness. I am not persuaded that those facts mandate a conclusion that the bank was waiving any claim that it had against Judy Ray, debtor. That theory of defense to the lien by plaintiff is rejected.

▉ FDIC contends, first, that in any event no exemption applies. It bases that contention on the fact that the debtor was unable to make the vendor's lien payments on the residence and all parties consented to sale of the residence with the net proceeds of sale approximating $34,566.56 being deposited in the registry of the Court, awaiting this Court's determination of entitlement to those monies. Under Texas Property Code § 41.002(b) the proceeds of a voluntary sale of homestead are exempted from garnishment for only six months after the date of sale, and more than six months have elapsed since the sale was effected. However, the contention by FDIC that those proceeds of sale have lost any exempt status is frivolous. The cognizant officials of FDIC consented to the sale and to the escrowing of proceeds of sale with the rights of all claimants to follow those proceeds. At least as between the debtor and FDIC, the parties to that escrow agreement, the argument that § 41.-002(b) of the Property Code prevents the exemption is rejected.

The debtor has established three separate defenses under Texas law to the claim of lien advanced by FDIC, any one of which would entitle her to full relief if only Texas law is applied. In arguments at the close of testimony FDIC advanced for the first time a claim that while the *bank* might have been subject to those defenses federal law prevents the application of any of those defenses to it, citing *FDIC v. Bank of America National Trust and Savings Association,* 701 F.2d 831 (9th Cir.1983), cert. den. 104 S.Ct. 343. Further, FDIC argued that Judy Ray acknowledged that she had executed the note and the mechanic's lien on October 1, 1981, and that that fact alone is sufficient to subject her homestead defenses to the D'Oench Doctrine. *D'Oench, Duhme & Company v. FDIC,* 315 U.S. 447, 62 S.Ct. 676, 86 L.Ed. 956 (1942).

The debtor protested consideration of those argued defenses which had never been pleaded by FDIC. Debtor added, however, that even if those defenses were considered she could avoid any federal law defenses under the strongarm powers of § 544(a) or § 544(b) which are available to her by virtue of the provisions of § 1107(a) of the Code.

This Court recognizes the validity of the protestations by the debtor that FDIC had not timely raised any of those defenses. However, several banks have failed in this division of the Northern District of Texas and considerable litigation by and against FDIC in divers cases is probable. The issue of possible federal defenses available to FDIC is one which is reasonably calculated to be raised time and again. I concluded, therefore, to permit trial amendment by FDIC so that those issues could properly be raised and, if necessary, the record reopened for additional evidence.

The basic premise of D'Oench and its progeny is that the maker of a note is estopped from raising defenses against FDIC, because the maker has acted in contravention of a general policy to protect the

FDIC, and the public funds which it administers, against misrepresentations of the assets of a bank which is to be insured. The *D'Oench* court found that the misrepresentations on a note obligation held as an asset of a bank induced, or could have induced, the FDIC to make the initial decision to insure the bank. The FDIC's decision to insure is based on its determination that the bank is solvent, such solvency in part being evidenced by the misrepresented assets. The court interpreted relevant portions of the Federal Reserve Act, 12 U.S.C. § 264(s) and (y), to determine that public policy protects the FDIC as insurer in these instances. The maker of a note cannot rely on his own wrongful act to defeat the obligation on a note against the FDIC.

More modern cases have addressed the situation in which banks have failed and have been taken over by the FDIC acting in its capacity as receiver or corporate insurer. A threshold determination which must be made on that issue is concerned with the capacity in which FDIC is acting in a particular case. A comprehensive discussion of the distinction between the FDIC as receiver and the FDIC as corporate insurer is contained in the opinion of *Gunter v. Hutcheson*, 674 F.2d 862 (11th Cir.1982) cert. den. 459 U.S. 826, 103 S.Ct. 60, 74 L.Ed.2d 63; reh. den. 459 U.S. 1059, 103 S.Ct. 477, 74 L.Ed.2d 624. For the purposes of this memorandum it is sufficient to posit that FDIC, when acting as receiver, continues to act on behalf of the bank in managing and liquidating assets of the bank. In that capacity it is subject to the same defenses to which its predecessor bank would have been subject. As corporate insurer, however, FDIC employs a "purchase and assumption" transaction by which FDIC obtains a purchaser for the failed bank which reopens the bank without interruption of operation and with no loss to depositors. In a "purchase and assumption" operation the purchasing bank need only purchase assets of highest quality and those assets which it decides to reject are returned to FDIC. In that event FDIC, as insurer, purchases those rejected assets and attempts to collect them to mini-

mize the loss to the FDIC insurance fund. *Gunter,* supra at 865.

In the *Gunter* and *D'Oench* situations, the greater power obtained by the FDIC as insurer stems from the strong public policy involved when the FDIC bases its decisions regarding the administration of public insurance funds on the representation of note obligations as assets of a bank.

Mention should be made of the fact that *D'Oench* and *Gunter* apply to debts as assets of the bank as opposed to liens which secure such obligations. The instant adversary proceeding involves only a determination as to the validity of liens securing the note obligation.

As indicated above FDIC, as receiver of a national bank, is simply a successor in interest of the bank and takes title to the bank's claims against its debtors subject to all defenses which are good against the bank. *In re Anjopa Paper and Board Manufacturing Company*, 269 F.Supp. 241 (S.D.N.Y.1967). That result contrasts to the D'Oench Doctrine whereby FDIC as corporate insurer takes greater rights than the failed bank because of the strong federal policy involved.

If there is no federal statutory law then federal common law is applied in making the determination as to FDIC immunity. Arguably the Bankruptcy Code itself provides federal statutory law but where, as here, state exemptions are elected the state rules of construction would be applied. In my opinion the federal common law is required to be utilized, where the starting point is the Supreme Court decision of *United States v. Kimbell Foods Inc.*, 440 U.S. 715, 99 S.Ct. 1448, 59 L.Ed.2d 711 (1979). There the Supreme Court set forth three factors to be utilized in determining whether to formulate a uniform federal rule or to adopt state law as the federal rule of decision: (1) whether the federal program was one which by its nature required nationwide uniformity; (2) whether state law would frustrate the specific objectives of the federal program; and (3) whether applying a federal rule would dis-

rupt commercial relations predicated on state law. The *Gunter* court, supra at 869, applied the *Kimbell* rationale to a case involving FDIC as corporate insurer and there found that a uniform federal rule was mandated to protect the FDIC from fraud claims of which it lacked knowledge. Subsequent cases do not always recognize that decision as determinative as to whether a uniform federal rule is mandated or whether state law is to be adopted as the federal rule, choosing instead to refer back to the D'Oench doctrine. *See FDIC v. Timbalier Towing Company*, 497 F.Supp. 912 (N.D.Ohio E.D.1980) (If, however, the state law is not contrary to an overriding federal policy and the court cannot ascertain the federal rule by examining federal constitutional, statutory, or available case law, the court may look to appropriate state law). *See* also *American National Bank of Jacksonville v. FDIC*, 710 F.2d 1528 (11th Cir.1983) (footnote 7, page 1534). In this particular case the direction in which federal common law will be applied shall be pretermitted. Further, it is not necessary to determine at this time the applicability, if any, of § 544 of the Code. I have concluded that as far as the Ray transaction is concerned FDIC is acting in its capacity as receiver and not as insurer.

▪ Although leave to amend was given to both parties it is only by liberal construction of their respective post-trial briefs can their respective contentions be determined. No other pleadings have been filed by them. The reply brief of FDIC includes a segment regarding the capacity of FDIC concerning the Ray note assigned to the bank by LaDon Realty. In that brief FDIC claims an interest in the note in its corporate capacity and bases the position on a note and loan agreement between FDIC as receiver and FDIC as corporate insurer. The note and loan agreement was filed in the Office of the United States District Clerk in Lubbock, Texas, on March 16, 1984, and has been made a part of this record. That document indicates that FDIC, in this particular instance, is *not*

acting in its corporate capacity but is acting as receiver which has obtained a loan from FDIC as corporate insurer. As receiver FDIC retained the Ray notes among other assets of the bank and also sold some assets to the agent bank who took over operations for Seminole State National Bank. As receiver FDIC borrowed money from FDIC as a corporation under 12 U.S.C. § 1823(d). FDIC as a corporation holds a security interest in the assets retained by FDIC, including the Ray note. However it did not purchase those assets.

12 U.S.C. § 1823(d) specifically states that "the proceeds of every such sale or loan shall be utilized for the same purposes and in the same manner as other funds realized from the liquidation of the assets of such bank". It appears to mean that loan proceeds obtained under 12 U.S.C. § 1823(d) are to be used by the receiver in its liquidation of the retained assets which were not sold to FDIC as corporate insurer. The note and loan agreement reflects that the loan money is to be used "for the purpose of the receiver's payment of an advanced liquidating dividend for uninsured depositors and other general creditors of the bank in the same manner as other funds realized from the liquidation of the assets of the bank as provided by 12 U.S.C. § 1823(d)." Essentially FDIC has retained the Ray note in its receiver capacity. FDIC as corporate insurer has a secured interest in that note but does not own that asset in its corporate capacity. This distinction is most relevant in the interpretation of the *Gunter v. Hutchenson* rationale of the *Kimbell* analysis of federal common law. The facts in this case are easily distinguished from *Gunter* because *Gunter* involved FDIC as corporate insurer. The *Kimbell* analysis led to the court protecting the FDIC as it had acted under 12 U.S.C. § 1823(e)[3] which allowed FDIC to make loans and purchase assets whenever "in its judgment such action will reduce risks or avert a threatened loss to the corporation, facilitate a merger or consolidation, or facilitate the sale of assets."

---

**3.** Partially repealed.

In applying the *Kimbell* analysis and ultimately determining that federal common law should be uniform (thereby electing not to allow the Gunters the defense of fraud) the *Gunter* court relied heavily on the fact that FDIC had to make quick judgment whether to act as receiver and liquidate or whether to act as corporate insurer, selling assets to an agent bank and buying back those assets which the agent bank determined not to be of the highest quality.

When the distinction between the instant case and *Gunter* is considered one might argue that not only should the liens against the homestead be avoided as far as FDIC is concerned but also that the debtor should be permitted to utilize her defenses of failure of consideration for her execution of the $30,000.00 note. However, I am not going to find that the $30,000.00 note should be avoided. Whether that obligation is dischargeable is not the subject of this memorandum. I do find, however, that the liens against the homestead are avoided for all purposes.

It is, therefore, ORDERED by the Court that the lien claimed by FDIC to exist against the homestead of the debtor, Judy Gwen Jeter, be, and it is hereby, declared to be of no effect.

It is further ORDERED by the Court that the monies totalling $34,566.56 which were tendered into the registry of this Court pending resolution of the dispute with FDIC be, and they are hereby, determined to be the property of the debtor, Judy Gwen Jeter, free and clear of any claim or demand by FDIC.

LET JUDGMENT BE ENTERED ACCORDINGLY.

The debtor's prayer for attorney's fees is denied.